## In re WITT DAIRY CO.
### No. 31799.

District Court, N. D. California, S. D.
June 20, 1942.

Grant H. Wren and Milton Newmark, both of San Francisco, Cal., for liquidating trustee.

Charles H. Sooy & Charles D. Sooy, of San Francisco, for debtor.

Esther B. Phillips, Asst. U. S. Atty., of San Francisco, Cal., for Collector of Internal Revenue.

Wayne R. Millington and Herbert Pothier, both of San Francisco, Cal., for M. R. Mattei.

Torregano & Stark and Charles M. Stark, all of San Francisco, Cal., for State Finance Co.

Fred G. Goldsworthy, of San Francisco, Cal., for California State Labor Commissioner.

Maurice R. Carey, of San Francisco, Cal., for Mercantile Bond Co.

S. T. Hogevoll, of San Francisco, Cal., for A. Grainger.

Harold E. Haven, of San Francisco, Cal., for Valley Creamery of San Jose et al.

Fabian D. Brown, of San Francisco, Cal., for California State Unemployment Commission.

H. D. Armstrong, of San Francisco, Cal., for Federal Reserve Bank of San Francisco and American Trust Co.

Robert M. Brown, of San Francisco, Cal., for Stanford University.

Harold E. Haven and Courtney L. Moore, both of San Francisco, Cal., for Albert Witt, Jr.

R. V. Bressni and M. Henry Robidoux, both of San Jose, Cal., for Rye Tractor & Equipment Co.

Thomas, Beedy & Paramore and Mark Coleman, all of San Francisco, Cal., for Mack International Motor Truck Corporation.

David Rubenstein and P. Paul Vlautin, Jr., both of San Francisco, Cal., for Edward Olden.

Charles R. Garry, of San Francisco, Cal., for Charles F. Witt, Walter Witt, and Albert Witt, Sr.

Brobeck, Phleger & Harrison, of San Francisco, Cal., for American Trust Co. and certain creditors.

Albert C. Agnew, of San Francisco, Cal., for Federal Reserve Bank of San Francisco and certain creditors.

Torregano & Stark, of San Francisco, Cal., for State Finance Co., and certain creditors.

Crist & Beene, of Palo Alto, Cal., for Harley M. Jenecke.

Andrew J. Eyman, of San Francisco, Cal., for Albert Witt, Sr.

Cooley, Crowley & Supple, of San Francisco, Cal., for Massachusetts Bonding & Investment Co.

Earl Warren, Atty. Gen., and James Arnerich, Deputy Atty. Gen., for W. B. Parker, Director of Agriculture of State of California.

Donald H. Smith, of San Francisco, Cal., for J. F. Serpa and Charles A. Prevost.

ST. SURE, District Judge.

Debtor, a co-partnership, filed its petition under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, on July 31, 1939. On February 5, 1940, this Court approved a plan whereby the co-partnership was dissolved and the assets of the co-partnership were delivered to the four individuals who had comprised it, to be retained by them unless they defaulted in the payment of the obligations of the co-partnership which they had assumed. In the event of such default the property was to revest in the Liquidating Trustee. A copy of the plan was mailed to all creditors and counsel. Notice was sent by the Conciliation Commissioner to all creditors and to all counsel interested, advising them of the confirmation of the plan by the Court, and advising them that from and after February 5, 1940 the individuals who had comprised the co-partnership would manage and operate the businesses of the co-partnership as separate businesses, exclusively and solely for their own account alone.

On July 6, 1940, Albert Witt, Jr., one of the co-partners, defaulted in the payments which he had agreed to make, and on November 18, 1940, this Court found that Albert Witt, Jr., was in default as of July 6, 1940, and directed him to surrender to the Liquidating Trustee the assets which had been turned over to him by the debtor co-partnership. This order also provided that moneys and property coming into the hands of the Liquidating Trustee should not be paid out or disposed of without further order of this Court.

On March 1, 1941, certain persons filed a petition claiming to have furnished labor, services, merchandise and supplies to Albert Witt, Jr. between February 5, 1940, and November 18, 1940, while he was "authorized as a Trustee or Receiver of the above entitled Court to operate and conduct the aforesaid business", alleging that said labor, etc., had not been paid for. The petition prayed that an order of the Court be made establishing these claims as first liens

against the funds in the hands of the Liquidating Trustee.

On April 17, 1941, answer was made by the Liquidating Trustee denying the allegations of the petition.

On the same date this Court referred the matter to a Special Master, and ordered that all of the alleged creditors of the above named debtor whose claims accrued between February 5, 1940, and November 18, 1940, should present their claims to the Special Master.

On July 11, 1941, a report on these claims was filed finding that on February 5, 1940, the debtor's amended plan under which the co-partnership was dissolved, had been confirmed, and that thereafter the individuals comprising the co-partnership operated the respective businesses as their separate businesses; that the notice of the Conciliation Commissioner, referred to above, had been sent to the creditors and counsel; and that the claims accruing between February 5, 1940, and November 18, 1940, were not debts of the co-partnership.

The Special Master's Certificate and Report relative to all claims filed against the debtor, dated April 9, 1942, did not classify these claimants as creditors of the estate. He bases his reasons for not doing so upon the grounds that the persons dealing, between these dates, with the former members of the co-partnership, dealt with them as individuals and not as debtor representatives under the direction of the Court; that the property of the debtor had been vested in the individuals that had comprised the co-partnership, subject to being revested in the debtor in the event of a default in the payment of the debts assumed by the individuals formerly comprising the co-partnership; that any person who had notice of the pendency of this proceeding had ample means of knowing how said individuals were operating, and one who did not have notice of these proceedings could not have been led to believe that any of the individuals were representing the debtor, or its estate, or operating under the jurisdiction of this Court.

The Report further found that by its order of November 18, 1940, the Court retained jurisdiction generally of the debtor in order to enforce property rights which might accrue because of the failure of an individual to perform a condition subsequent, and denied the petition of these claimants without prejudice to their right to offer proof that the Liquidating Trustee had in his hands some definite amount of money or property which never belonged to the debtor or its estate prior to its petition under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203; and denied counsel fees to claimants.

Claimants object to the findings of the Special Master upon three grounds: (1) That the Court exceeded its power in appointing a Liquidating Trustee, as provision for such an officer is not made under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203; (2) that claimants are entitled to be classified as class one creditors by virtue of Sections 64, subds. a (1) and b of the Bankruptcy Act, 11 U.S.C.A. § 104, subds. a (1) and b; (3) that all of the property revested in the Liquidating Trustee was not property of the debtor, and that the claimants should be allowed to trace the property that was not the property of the debtor at the time of the filing of its petition, or which increased the assets of the estate, and recover it from the debtor.

■ (1) The contention by the claimants that the Court exceeded its power in appointing a Liquidating Trustee is answered by the case of In re Armold, 7 Cir., 83 F.2d 530, at page 531, where the Court said:

"Appellant erroneously assumes that the court had no power to appoint a receiver under amended section 75. Under this section the power of the court over the bankrupt's property is almost unlimited in preserving and protecting it for the best interests of both the debtor and the creditors. See subsections (e), (n), (p), and (s), § 75, as amended (11 U.S.C.A. § 203 (e, n, p, s). Grave duties and responsibilities are thereby laid upon the court, and we see nothing in the law to prevent it from performing those duties and meeting those responsibilities with the aid of receivers, custodians or any other officers of the court, whenever occasion demands it. It would be a physical impossibility for a judge of the court personally to attend to all such duties, and we know of no enactment of Congress which indicates such requirement."

(2) Claimants urge that Congress intended, in enacting Section 64, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. (b),[1] to provide security and priority

---

[1] 11 U.S.C.A. § 104, sub. b. "Debts contracted while a discharge is in force or after the confirmation of an arrangement shall, in the event of a revocation

for new creditors when a confirmation plan was set aside for a debtor's default, because the old creditors participated with the debtor in the formulation of the plan, such participation allowing the debtor to secure new creditors. They claim that when the old creditors consented to this plan they consented to the transfer of the assets of the Witt Troutmere Dairy to Albert Witt, Jr., and the continuation of the business; therefore, the old creditors acquiesced in the essential and usual way of operating a business, to wit: on credit, and they are now estopped to claim that the new creditors are not entitled to priority in payment of their claims; that if new creditors subsequent to confirmation are not priority creditors, in the event of a failure of a plan, there would be many cases of hopeless insolvency where the old creditors would consent to an impossible plan in the hope that they would be paid off in whole or in part at the expense of the new creditors. As authority for their position that they are entitled to priority over all other creditors of debtor, claimants cite the case of In re Irving Electrical Supply Co., D.C. S.D.N.Y., 41 F.Supp. 16.

In In Re Irving Electrical Supply Co. the Court retained jurisdiction, not only of the debtor, but also of the assets of the debtor, and the debtor continued to function as debtor-in-possession. The Court held that a purchase made in the ordinary conduct of the business should be entitled to priority as an expense of administration under Section 64, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a.

■ The cited case is not in point here. By its order of November 18, 1940, the Court retained general jurisdiction of the debtor and not of its assets.[2] The confirmation and approval of the amended plan further sustains this contention, for the assets of the debtor were transferred to the individuals who had comprised the partnership, to be kept by the individuals, unless and until they defaulted in the obligations they assumed.

In the case of In re Gelardin, D.C.E.D. N.Y., 41 F.Supp. 17, the factual situation was similar to the one presented here. There the bankrupt filed its petition under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., and became a debtor in possession. An amended plan of arrangement was confirmed. Subsequently the debtor defaulted in the payments provided for in the amended plan. Between the time that the plan was confirmed and the default, purchases on credit were made by the debtor. The claimants contended that they were entitled to priority for such claims as "costs and expenses of administration" under Section 64 subd. a (1) of the Bankruptcy Act, 11 U.S.C.A. § 104, subd. a (1). The order of confirmation provided: "ordered, that this Court shall retain jurisdiction until the provisions of the Arrangement have been fully performed." The Court cites Collier on Bankruptcy, 14th Ed., Vol. 8, pp. 1409, 1410, 1411 and more particularly p. 1412, where it is said:

"But retention of jurisdiction after confirmation is not for all purposes, and does not give the court the jurisdiction over the business and affairs of the debtor which would be requisite to constitute new debts expenses of administration."

On the intention of Congress regarding priority rights after confirmation, the Court said: "It seems to me that what Congress intended was that on the confirmation of the plan the debtor would cease operating the business under the orders of the Court, and that claims for merchandise sold to the debtor, for resale as a part of his business, would not, under Section 378 of the Bankruptcy Act, 11 U.S. C.A. § 778, have priority, where the debtor was subsequently adjudicated a bankrupt, unless in the reservations of jurisdiction in the order confirming the plan it was specifically provided that the continuance of the business was to be under the order of the Court, which would make such claims expenses of administration."

The Court said the reason for the retention of jurisdiction was to permit action under Section 377 of the Bankruptcy Act, 11 U.S.C.A. § 777.[3]

---

of the discharge or setting aside of the confirmation, have priority and be paid in full in advance of the payment of the debts which were provable in the bankruptcy or arrangement proceeding, as the case may be."

[2] "14. This court hereby retains juris-

diction of this entire matter until its final consummation."

[3] 11 U.S.C.A. § 777

"Where the court has retained jurisdiction after the confirmation of an arrangement and the debtor defaults in any of the terms thereof or the arrangement

The following language used in that case answers the present claimants' argument that by the acceptance of the amended plan the old creditors acquiesced in the operating of the business upon a credit basis, and to hold otherwise would be inequitable to the new creditors:

(Page 18 of 41 F.Supp.) "There is nothing inequitable about this, because those creditors who sell on credit to the debtor, after confirmation of the plan, know that the debtor is no longer administering the property in the debtor proceeding, and they give him credit the same as any other debtor, and they also know that if he does not comply with the plan he may be adjudicated a bankrupt.

\*  \*  \*  \*  \*  \*

"If the debtor could by his purchases after confirmation of the plan continue to give priority for new purchases, the conditions could be so changed that the whole plan would be changed, and the benefit of the priorities granted to those who sold to the debtor, while administering the estate under order of the Court to make possible the forming of the plan, would be reduced if not destroyed. This, it seems clear to me, was not the intent of Congress, and should not be allowed."

The Court then discusses the In re Irving Electrical Supply Company case distinguishing it on the basis that there the Court retained jurisdiction over the debtor and its assets, whereas in the Gelardin case the Court generally retained jurisdiction over the debtor without mentioning assets.

The Court concluded that after the confirmation of the plan the debtor ceased operating the business as part of the administration of the estate, and thereafter operated the business for its own benefit, and the Court denied the creditor-claimants' petition for review.

It has been held that statutes involving priorities of claims against an estate in bankruptcy must be strictly construed, and the burden rests upon the one asserting priority to establish that his claim comes within the intended class. In re Paradise Catering Corporation, D.C.S.D. N.Y., 36 F.Supp. 974. Section 64, subd. a(1) of the Bankruptcy Act, 11 U.S.C.A. § 104, subd. a(1), upon which claimants rely in asserting their claims, provides, in part: "The debts to have priority, \* \* \* shall be (1) \* \* \* the costs and expenses of administration, \* \* \*"

From the amended plan approved by the Court, and the findings of the Special Master, it is apparent that there was no administration by the debtor of the estate between February 5, 1940, and November 18, 1940, and there could therefore be no administration expenses. In view of the holdings in the Gelardin case and the Paradise Catering case, I find that these claimants have failed to sustain the burden of proving that these claims were expenses of administration and entitled to priority.

(3) Claimants raise the point that some of the property in the hands of the Liquidating Trustee was not property of the debtor's estate but was acquired after the confirmation of the plan, and that they should be allowed to trace this property and recover it. The Special Master's recommendation is that claimants be given an opportunity to offer proof that the Liquidating Trustee holds money or property derived solely from the proceeds of property which was never owned, or affected by the contracts of the debtor prior to the filing of its petition.

It is therefore ordered:

The Court accepts and adopts the report of the Special Master filed on April 9, 1942, and the findings of fact and conclusions of law and recommendations set forth therein.

terminates by reason of the happening of a condition specified in the arrangement, the court upon hearing after notice to the debtor, the creditors, and such other persons as the court may direct shall—
  "(1) where the petition has been filed under section 721 of this title, enter an order dismissing the proceeding under this chapter and adjudging the debtor a bankrupt, if not previously so adjudged, and directing that the bankruptcy be proceeded with pursuant to the provisions of this title; or

  "(2) where the petition has been filed under section 722 of this title, enter an order either adjudging the debtor a bankrupt and directing that bankruptcy be proceeded with pursuant to the provisions of this title or dismissing the proceeding under this chapter, which ever in the opinion of the court may be in the interest of the creditors."