In re CLUB DEVELOPMENT & MAN-
AGEMENT CORPORATION, dba Pala
Mesa Resort, dba Tennis Club Develop-
ment And Management Corporation,
Debtor.

MARK IV PROPERTIES, INC.,
Appellant,

v.

CLUB DEVELOPMENT & MANAGE-
MENT CORPORATION, dba Pala Mesa
Resort dba Tennis Club Development
And Management Corporation, Appel-
lee.

BAP No. SC–82–1030HGE.
Bankruptcy No. 8100176–M.

United States Bankruptcy Appellate Panels
of the Ninth Circuit.

Argued Sept. 15, 1982.

Decided Dec. 1, 1982.

Gary S. Mobley, Goldman, Gordon & Lip-
stone, and Peter Aronson, Jay N. Hartz,
Gary S. Mobley, Weissburg & Aronson, Inc.,
Los Angeles, Cal., for appellant.

Charles D. Christopher, Sullivan & Jones,
San Diego, Cal., for appellee.

Before HUGHES, GEORGE and EL-
LIOTT, Bankruptcy Judges.

## OPINION

HUGHES, Bankruptcy Judge:

This is an appeal from an order authorizing the debtor to pay salaries to corporate employees in an inactive Chapter 11 case. We reverse.

### I.

Club Development and Management Corporation, (CDMC) and Mark IV, Inc. formed a joint venture to operate Pala Mesa Resort in January 1980, with each owning a 50% interest, CDMC is owned by the Leonard family members, who are its officers, directors and shareholders. The Leonards were employed by the joint venture to manage the resort, and receive salaries from the joint venture. They did not receive any salary from CDMC.

Pursuant to the joint venture agreement, either party could elect to buy or sell the respective 50% interests in the resort. Conflict developed, and CDMC put Mark IV on notice that it elected to buy or sell in November 1980. At the same time, CDMC offered to buy Mark IV's interest. In December 1980, Mark IV announced that, rather than sell its interest, it elected to buy CDMC's interest. The parties had a number of disputes regarding the terms of the sale, and CDMC eventually filed a petition under Chapter 11 of the Bankruptcy Code.

Soon after the filing, CDMC applied to the bankruptcy court for an order compelling the sale of the entire resort, including Mark IV's interest, to a third party joint venture pursuant to 11 U.S.C. § 363(h). (The Leonard family owned one of the two corporations that made up the third party joint venture). Mark IV, however, invoked 11 U.S.C. § 363(i) and asserted its rights as a co-owner to acquire CDMC's interest by matching the third party's offer. The court approved Mark IV's offer and ordered CDMC to sell its interest to Mark IV.

Upon close of escrow, CDMC received approximately $2.6 million in cash and a $500,000 promissory note from Mark IV. The cash and note are the primary assets of CDMC. CDMC has not been engaged in any business activities since the sale of its interest in the resort. It is, however, engaged in a lawsuit with Mark IV.

Mark IV took over management of the resort at the close of escrow and terminated the Leonards' employment. Eleven days later, CDMC requested court authority to pay corporate salaries to the Leonards as expenses of administration. The bankruptcy court granted the request and five members of the Leonard family began receiving a total of $12,700 a month. This authorization, which is the order on appeal, was later stayed pending appeal.

The order itself suggested that the court had deferred to the debtor-in-possession's business judgment in authorizing the salaries. The court later announced two other reasons for its orders: Severance pay and an inducement for keeping the management team together to look for new business opportunities and to aid in the litigation with Mark IV.

### II.

A trustee operating a business in a Chapter 11 case may incur unsecured debt in the ordinary course of business that is allowable under 11 U.S.C. § 503(b)(1) as a cost of administration. 11 U.S.C. § 364(a). However, unsecured debt incurred outside the ordinary course of business is not entitled to be treated as a cost of administration unless the court's authorization has been obtained after notice and a hearing. 11 U.S.C. § 364(b). When (as in the present case) no trustee has been appointed, the debtor-in-possession has the powers and duties of a trustee in bankruptcy. 11 U.S.C. § 1107(a).

### A.

The standards for authorizing a trustee to incur debt under section 364(b) so that it is allowable as an expense of administration under section 503(b)(1) are found in the latter section. Other than certain taxes and tax-related debt, 11 U.S.C. § 503(b)(1)(B), (C), only the "actual, necessary costs and expenses of preserving the

estate" are allowable as administrative expenses. 11 U.S.C. § 503(b)(1)(A). An order granted pursuant to section 364(b) must be supported by such a finding. B.R. 752(a).

The significance of an allowance pursuant to section 503(b)(1) is two-fold: it is not only an allowance against the estate; administrative expense claims enjoy a priority over other claims. Priority statutes are strictly construed. *Standard Oil Company v. Kurtz,* 330 F.2d 178, 180 (8th Cir.1964); *Goldie v. Cox,* 130 F.2d 690 (8th Cir.1942); *Matter of Witt Dairy Co.,* 48 F.Supp. 964 (N.D.Cal.1942).

### B.

The standards for authorizing claims against a bankruptcy estate are especially strict when the claimant is a fiduciary. In such cases, the Supreme Court has said that bankruptcy courts have a duty of "rigorous scrutiny" of the claim. See *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), at page 308, 60 S.Ct. at 246:

> [T]he bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate. And its duty so to do is especially clear when the claim seeking allowance accrues to the benefit of an officer, director or stockholder.

The Court also stated at page 306, 60 S.Ct. at 245:

> A director is a fiduciary. *Twin Lick Oil Co. v. Marbury,* 91 U.S. 587, 588 [23 L.Ed. 328]. So is a dominant or controlling stockholder or group of stockholders. *Southern Pacific Co. v. Bogert,* 250 U.S. 483, 492 [39 S.Ct. 533, 537, 63 L.Ed. 1099]. Their powers are powers in trust. See, *Jackson v. Ludeling,* 21 Wall. 616, 624 [88 U.S. 616, 22 L.Ed. 492]. Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. *Geddes v.*

*Anaconda Copper Mining Co.,* 254 U.S. 590 [41 S.Ct. 209, 65 L.Ed. 425].

> In addition, the duty of close scrutiny by the court is particularly acute where, as here, there is no independent trustee to help ensure that claims by fiduciaries meet the test, enunciated in *Pepper,* that the "transaction carries the earmarks of an arm's length bargain." (Pages 306–307, 60 S.Ct. at 245).

■ To summarize, the allowance of an administrative expense requires a finding that the expense is "necessary ... [for] preserving the estate." Allowance of such claims to an officer, director or stockholder imposes a duty of "rigorous scrutiny" upon the court, and the absence of an independent trustee increases the court's duty to insure that the transaction is inherently fair to the estate and its creditors.

Those standards must now be applied to the matter on appeal.

### III.

We begin our analysis of the appellee's various contentions by noting that the Leonard Family members were (1) the claimants, (2) the sole officers, directors and stockholders of the debtor corporation and (3) the persons exercising the duties and powers of the debtor-in-possession.

### A.

■ We can find no support in the Code or the record for appellee's contention that the allowance may be justified as an exercise by the debtor-in-possession of its business judgment. Aside from the fact there was no business in operation calling for an exercise of judgment, business judgment is not a statutory ground for allowance of administrative expenses incurred out of the ordinary course of business. 11 U.S.C. § 503(b)(1).

■ We therefore hold that the business judgment of the debtor-in-possession does not support the order appealed.

## B.

■ The severance pay justification for the salaries was also inadequate factually and legally. Severance pay normally is made by an employer to an employee upon termination (or "severance") of the employment relationship. Implicit in the holding that the Leonards were entitled to such pay are findings that an employment relationship existed between CDMC and the Leonards, and that this relationship was severed.

The record, however, shows no such employment relationship between CDMC and the Leonards. The record shows instead that they were employed by, and received their salaries directly from, the joint venture, and that their employment relationship with the joint venture was severed by Mark IV when it took over the management of the resort.

While the trial court's findings are not to be disturbed unless clearly erroneous, Bankruptcy Rule 810, the finding that the Leonards were entitled to severance pay is contrary to the record before us and is therefore clearly erroneous.

Even if such a liability did exist, it would not be entitled to priority administrative claim status. The Ninth Circuit has recently held that severance pay based upon length of service is not a priority claim under § 64a of the former Bankruptcy Act. *In re Health Maintenance Foundation and System Board of Adjustment,* 680 F.2d 619 (9th Cir.1982). Because § 503(b)(1)(A) is derived from § 64(a) of the former Act, H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977), 355 U.S.Code Cong. & Admin.News 1978, p. 5787, the cases decided under the Act are relevant to cases decided under the present Code. *In re Peninsula Gunite,* 24 B.R. 593 (9th Cir.Bkrtcy.App.1982).

## C.

■ Appellees also attempt to justify the order on the grounds that the management team had to be kept together to search for new business opportunities and to aid in litigation. No testimony, affidavits or documentary evidence were introduced by appellee in support of this contention. The entire record consists of representations of counsel and the procedural history of the bankruptcy case recited in Part I above. Thus the record discloses no factual support for findings that the salaries were necessary "to keep the management team together" or, more to the point, that keeping the Leonards together was necessary in order to preserve the estate.

The record that does exist is to the contrary. The estate consists of cash and a note; there is no ongoing business requiring the services of a management team. The Leonards owned and managed CDMC previously without receiving any salaries that the record discloses. Moreover, it is not apparent how a search for new business opportunities is relevant in a liquidating Chapter 11 case such as this.

Nor does the record show why salaries were necessary to obtain the Leonards' assistance in the litigation with Mark IV. The Leonards, who wholly own and direct the debtor corporation, are the only parties who could suffer from the loss of their support in this litigation. Thus, based on the record, it is unlikely that they would withhold cooperation, regardless of salary.

We conclude that the record does not support findings that the salaries were necessary to seek new investment opportunities for the debtor's estate, or to assist in the debtor's litigation. In light of the high standards discussed in Part II, above, such findings are clearly erroneous, as is any implied finding that these services were necessary to preserve the estate.

Reversed and remanded for further proceedings consistent with this opinion.