**In re MICROWAVE PRODUCTS OF AMERICA, INC., Debtor.**

**Bankruptcy No. 88–27990–D(sbb).**

United States Bankruptcy Court,
W.D. Tennessee, W.D.

May 26, 1989.

See also, Bkrtcy., 100 B.R. 376.

William Gotten, Memphis, Tenn., for L. Joseph Scallon.

Brent Whittlesey, Los Angeles, Cal., for Microwave Holdings, Inc.

Harris Quinn, Memphis, Tenn., for Microwave Products of America, Inc.

Jack Marlow, Memphis, Tenn., for American Universal Ins. Co.

David Cocke, Memphis, Tenn., for Litton Industries, Inc.

Michael Coury, Memphis, Tenn., for the Unsecured Creditors Committee.

Jennie Latta, Memphis, Tenn., for MagneTek, Inc.

Julie Chinn, Memphis, Tenn., Asst. U.S. Trustee.

John Ryder, Memphis, Tenn., for First Interstate Bank of California.

Hank Shelton, Memphis, Tenn., for Western Industries.

MEMORANDUM OPINION AND ORDER ON APPLICATION TO PAY EXPENSE CLAIM OF JOSEPH SCALLON

BERNICE BOUIE DONALD,
Bankruptcy Judge.

The above-styled matter came on for hearing April 12, 1989, on "application for order requiring debtor to pay administrative claim of Joseph Scallon". This matter is a core proceeding,[1] and the following shall constitute findings on fact and conclusions of law pursuant to Bankruptcy Rule 7052. Scallon served briefly as president of the debtor corporation, Microwave Products of America (hereinafter "MPA"), and seeks payment for salary and expenses as an administrative claim[2] for the period subsequent to the filing of the instant bankruptcy petition. The sole issue for the Court to determine is whether the claim may be allowed and if allowed, when it should be paid.

*Background Facts*

The applicant, Scallon, first became associated with MPA in August, 1988, when he reviewed certain reports at the request of an associate of Wayne Reeder ("Reeder"), an MPA Director. In early September, Scallon met with members of the Board of Directors about coming aboard as a consultant. According to the testimony adduced at trial, the company was in a "dire situation" and was experiencing cash flow, as well as, other problems. Scallon represented himself as a consultant with a Masters in Business Administration, and with considerable experience in restructuring troubled companies, reorganization workouts, and business bankruptcies. [See Exhibit 1, resumé of Scallon].

Subsequent to a meeting with the Directors around September 2, 1988, Scallon was brought on board as a consultant, but would act as "president and chief executive officer", as far as the employees were concerned. Scallon reported directly to the Board of Directors. The Board adopted a resolution confirming Scallon as president and CEO for limited purposes.[3] The Board, including Reeder, authorized a salary of Twelve Thousand Dollars ($12,000.00) per month, plus expenses, all of which were subject to future modifications. The Board generated a letter setting forth the duties of Scallon as consultant and president as per the agreement.

During this period Scallon served and performed the duties of president and enjoyed an amicable relation with the Board of Directors. Scallon commuted from Florida to Memphis, and made numerous trips to California. He put in approximately 40–60 hours weekly in performance of his duties.

As the company continued to suffer, Scallon allegedly made certain proposals for restructuring the company, which caused a rift between Scallon and certain board members, primarily Director Viphin Sahgal. Around October 24, the Board requested that Scallon commit to the company on a full time basis to expedite the restructuring efforts. Scallon agreed, but requested a salary adjustment. The company's restructuring efforts were unsuccessful, and on October 28, 1988, a petition in bankruptcy was filed by MPA.

Scallon met with attorneys to discuss various matters over the weekend subsequent to the petition. Scallon participated in numerous meetings, and performed various other activities relating to the bankruptcy. Further, he engaged in many activities relating to the management and

---

**1.** 28 U.S.C. § 157(b)(2)(A) & (B).

**2.** 11 U.S.C. § 503(b)(1)(A).

**3.** A copy of the Board Resolution was made an exhibit, and introduced into the record with limitations.

direction of the company, including aiding attorneys, accountants, and others in securing documents and providing information about the company. Scallon further transported Gary Pearson ("Pearson"), Vice-President and Chief Financial Officer of the debtor corporation, to Sioux Falls, SD, via his private plane for an emergency meeting.

Scallon met with the staff in Memphis, and in Sioux Falls on Monday and Tuesday to inform them of the events and circumstances surrounding the filing.

Scallon detailed the activities that took place from Friday, October 28 forward, subsequent to the filing of the petition, and filed the instant claim for payment. His estimated hours postpetition are as follows: 6–7 hours Friday evening, 18 hours Saturday, approximately 20 hours Sunday, approximately 20 hours on Monday, and approximately 20 hours on Tuesday. Expenses include costs of using his personal aircraft for some travel, including transporting Pearson to Sioux Falls, and commuting from Daytona Beach, and other general expenses.

Scallon was terminated on November 1, and Sahgal took over as CEO. The letter of termination recited two weeks severance pay, which Scallon has never received. Scallon prepared an invoice dated November 3, setting out billable time, severance pay, and expenses which total Thirteen Thousand Six Hundred Fifty-six Dollars ($13,656.00) representing time and expenses postpetition in connection with MPA. The invoice is an exhibit to the record.

Scallon submitted a listing of invoices rather than the original invoices. Upon objection by AUIC, the debtor agreed to furnish the original invoices as best evidence, but stated they were voluminous, and wished to substitute the summary for the composite to be entered later. Scallon testifies that he expended additional monies in trying to collect those monies due. He has not been paid any of the Thirteen Thousand Six Hundred Fifty-six Dollars ($13,656.00) claimed.

4. 11 U.S.C. § 327(a).

*Discussion*

11 U.S.C. 503(a), (b)(1)(A) provides in toto:

§ 503. **Allowance of administrative expenses.**

(a) An entity may file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of this case.

Further, 11 U.S.C. § 507(a)(1) establishes the priority of payment for administrative claims stating:

§ 507. **Priorities.**

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

Clearly the expenses for compensation to employees of the debtor-in-possession are expressly entitled to administrative expense status under section 503(b)(1)(A) as among the actual necessary costs and expenses of preserving the estate. In the instant case, Scallon was serving as president of the debtor corporation at the time of the filing and for a short period thereafter. He provided valuable service to the preservation of the estate and incurred expenses therewith. He should therefore be compensated as a priority claimant for his salary. However, the Code is unclear on whether and when it is appropriate to pay administrative expenses prior to confirmation. 3 *Collier on Bankruptcy,* ¶ 503.1 (15th ed. 1979). The Code specifically allows for interim fees for attorneys and other professionals [4] under section 331, but not for section 503 expenses.

Scallon was not hired as a professional under 11 U.S.C. § 327(a) and Bankruptcy Rule 2014, and therefore, is not entitled to interim payment under section 331.

■ A claim will be afforded priority under the Bankruptcy Code section providing for an allowance of administrative expenses if the debt both arises from a transaction with the debtor-in-possession, and is beneficial to the debtor-in-possession in the operation of the business. *In re Jartran, Inc.*, 732 F.2d 584 (7th Cir.1984). Therefore, not all postpetition debts incurred by the debtor in the ordinary course of business enjoy administrative expense status.

■ Scallon's employment arose as a result of a prepetition transaction with the debtor, which was ongoing at the time of the filing, and was continued postpetition. Scallon properly is only claiming postpetition amounts as an administrative claim. Notwithstanding, allowance of an administrative expense requires a finding that the expense is necessary for preserving the estate. Allowance of such claims to an officer, director, or stockholder imposes a duty of scrutiny upon the Court, and the absence of an independent trustee increases the Court's duty to ensure that the transaction is inherently fair to the estate and its creditors. *In re Club Development and Management Corporation*, 27 B.R. 610 (Bankr. 9th Cir.1982).

■ The standards are especially strict when the claimant is a fiduciary. *Id.* at 612. In such cases the Supreme Court has said that Bankruptcy Courts have a duty of "rigorous scrutiny" of the claim. *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

Inasmuch as Joe Scallon was a fiduciary, the Court must closely scrutinize not only the amount of the application, but the reasonableness of the fees, and the manner of payment.

■ Based on a review of exhibits 2, 3, and 5,[5] and testimony of Gary Pearson, Vice–President and Chief Financial Officer of MPA, at the evidentiary hearing that Scallon's efforts were necessary and beneficial to the preservation of the estate, the Court will allow a claim for salary expense of Three Thousand Dollars ($3,000.00), or one week for the reasonable value of services rendered to preserve the estate. Although, Scallon alleges a claim for payment for some Ninety-seven (97) hours, he was not employed on an hourly basis. Since Scallon was employed on a weekly basis, and he only worked five days postpetition, he is only entitled to one weeks pay. It is not uncommon, nor should it be unexpected for executives and professionals to put in exorbitant hours far in excess of those of hourly paid employees. As president and CEO, Scallon made a commitment, and long hours were simply a part of that commitment.

■ Scallon further claims Six Thousand Dollars ($6,000.00) in severance pay allegedly promised by the company. (Exhibit # 4, termination letter). While Scallon may have some colorable claim to severance pay, there is no clear authority for the allowance of severance pay as a administrative claim under section 503. There is a split of authority among courts of appeals relating to the treatment of severance pay claims as priority claims under § 503(b)(1)(A). *3 Collier on Bankruptcy* ¶ 503.4 (15th ed. 1979). The First,[6] Third,[7] and Ninth[8] Circuits have held that severance pay claims should not be accorded priority status just because the right to

---

5. Exhibit 2 is a letter to Scallon, allegedly written by Reeder, setting forth Scallon's duties as CED, and setting compensation at Twelve Thousand Dollars ($12,000.00) per month, plus expenses.

Exhibit 3 is minutes of October 24 Board Meeting wherein the Board of Microwave Products of America confirmed the appointment of Scallon.

Exhibit 5 is an invoice from Scallon and company showing a breakdown of claim.

6. *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir.1976).

7. *In re Public Ledger, Inc.*, 161 F.2d 762 (3rd Cir.1947).

8. *In re Health Maintenance Foundation*, 680 F.2d 619 (9th Cir.1982).

payment arose postpetition. However, the Second Circuit has accorded priority to severance pay claims in full as costs of administration. *Straus–Duparquet, Inc. v. Local Union No. 3, International Brotherhood of Electrical Workers*, 386 F.2d 649 (2d Cir.1967). The Court reasoned that severance pay is compensation for termination of employment, and since such termination in the case was "an incident of administration", the severance pay was "entitled to priority as such an expense". *Id.*

■ In order to ascertain whether severance pay is allowed as a priority, the Court must first ascertain what it is. Some Courts have treated severance pay as vacation pay which is wages, and may constitute an administrative expense if necessarily incurred during the administration of the case.[9] The Ninth Circuit distinguished between two types of severance pay, pay at termination in lieu of notice, and pay at termination based on length of employment.[10]

An alternate view is provided by the Second Circuit which concluded that severance pay is compensation for termination of employment.[11]

In the case at hand, Scallon's claim to severance pay should not be treated as vacation pay, since he had only been in the position fifty-six (56) days as of the petition date. Further, there was no referential document at the time of his hiring that sets forth a provision for vacation. For the same reasons, the short length of service, severance pay, in this instance, cannot be allowed on the basis of time of service, absent some document to that effect. Since the issue of severance pay only surfaced in the letter of termination, the Court assumes that in this case, severance pay is in lieu of notice or compensation for termination. However, there are no documents in the record that set forth a provision that Scallon would be given any specified period of notice prior to termination. Nor is there

a document that, as a condition of employment or termination, prescribes any amount of severance pay incident to termination. While the Court is aware that it is not uncommon to bargain for severance pay in the event of termination, the Court cannot take judicial notice of a fact not in evidence.

While the letter of termination mentions two weeks severance pay, the Court finds that the promise of severance pay is a gratuitous act on the part of the debtor-in-possession. Severance pay was not a bargained for item. Therefore, it is not an actual, necessary cost or expense of preserving the estate, and not entitled to be paid as a priority claim under 11 U.S.C. § 507(a)(1). It does, however, remain as a claim against the estate.

With regard to expenses, only those expenses incurred after the filing will be allowed upon verifiable documentation. The claimant's expense summary is replete with entries that are prepetition. [The summary is attached and made a part of this order.] The Court has lined through those entries that are disallowed as prepetition, as well as, those whose fixed time cannot be ascertained from reviewing the invoice listings. The allowable postpetition expenses total One Thousand Eight Hundred Sixty-one Dollars Seventy-one Cents ($1,861.71).

■ Additionally, the expenses are not sufficiently detailed to ascertain whether they were necessary and beneficial to the estate. The allowed expenses will only be paid upon proper documentation and explanation being provided the U.S. Trustee.

■ Section 503(a) leaves much to the Bankruptcy Rule 2016 regarding authorization of an entity to request payment of administrative expenses. Section 503(a) appears to permit an entity to file a request to be paid administrative expense claims after notice of a hearing. 3 *Collier on Bankruptcy* ¶ 503.1 (15th ed. 1979). Sec-

**9.** In the matter of *Schatz Federal Bearing Co.*, 2 C.B.C.2d 624 (Bankr.S.D.N.Y.1980).

**10.** *In re Mammoth Mart*, 680 F.2d 619 (9th Cir. 1982).

**11.** *Straus–Duparquet, Inc., Id.* See, also *Rodman v. Rinier*, 620 F.2d 319 (2nd Cir.1980), *cert. denied*, 446 U.S. 983, 100 S.Ct. 2963, 64 L.Ed.2d 839 (1980).

tion 1129(a)(9) provides that § 507(a)(1) priority claims must be paid in a case on the effective date of the plan unless the holder agrees otherwise.

The application for administrative expenses is affected by Bankruptcy Rule 2016. The Code is unclear in some respects on whether or when it is appropriate to pay administrative expenses prior to confirmation. The timing of the payment of such claims appears to be solely in the discretion of the Bankruptcy Court. *In re Verco, Ind.*, 20 B.R. 664 (Bankr. 9th Cir.1982); *In re National Buy Rite*, 7 B.C.D. 740, 10 B.R. 380 (Bankr.N.D.Ga.1981).

As to administrative claims other than interim fees pursuant to section 331, courts in chapter 11 cases have generally deferred payments until plan confirmation or liquidation, while some have allowed earlier payment unless special circumstances dictate otherwise. 3 *Collier on Bankruptcy* ¶ 503.5 (15th ed. 1979). However, there is no authority for the principle that administrative claims should generally be paid immediately. *In re Verco Industries, Inc.*, 20 B.R. 664 (Bankr. 9th Cir.1982). The determination of when an administrative expense claim is to be paid is within the discretion of the trial Court. *Id.* To allow payment immediately would place Scallon ahead of other creditors, and the Court finds no reason, based on the proof at the hearing, why such an approach should be taken.

██ Finally, Microwave Holdings, Inc., ("MHI") has alleged as a basis for objecting to the claim of Scallon, that Scallon committed "resumé fraud" in obtaining the position with MPA. This Court will rely on the reasoning and holding in *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 891 (Bankr.E.D.Pa.1987) where the Court held:

> "The focus of the express language of section 503 providing for allowance of administrative expenses is upon necessity of the expenses to the preservation of the debtor's estate, not upon the fact that the party dealing with the debtor may have valid contention that debtor unfairly breached contractual duty to lessee."

Therefore, while Microwave Holdings, Inc. alleges that Joe Scallon made numerous misrepresentations to obtain a position with the debtor corporation, and while Microwave Holdings, Inc. through cross examination revealed inaccuracies in the resume of Scallon, the Courts inquiry must be on the tests contained in the statute. These allegations have no bearing on the propriety of Scallon's claim, as he was already employed by the debtor at the time the petition was filed.

Based on all the foregoing and the record as a whole, the Court will allow the salary claim of Three Thousand Dollars ($3,000.00) as an administrative claim entitled to a first priority under 11 U.S.C. § 507(a)(1). The Court will allow the Six Thousand Dollars ($6,000.00) severance pay claim, as a nonpriority general unsecured claim. The Court will allow a priority expense claim in the amount of One Thousand Eight Hundred Sixty-one Dollars Seventy-one Cents ($1,861.71) to be paid upon the confirmation of the plan, and upon proper backup documentation being presented to the U.S. Trustee.

IT IS SO ORDERED.