**In re REGENSTEINER PRINTING CO., Debtor.**

**Nos. 90 C 3623, 90 B 4616.**

United States District Court, N.D. Illinois, E.D.

Dec. 5, 1990.

Ronald R. Peterson, Catherine Steege, Jenner & Block, Chicago, Ill., for appellant.

Steven B. Towbin, Michael J. Golde, Patrice A. Powers, Towbin & Zazove, Ltd., Chicago, Ill., for appellee.

## MEMORANDUM OPINION

GRADY, District Judge.

Pursuant to 28 U.S.C. § 158(a), the Unsecured Creditors' Committee of Regensteiner Printing Company ("Committee") appeals from the bankruptcy court's order granting the motion of the debtor-in-possession, Regensteiner Printing Company ("Debtor"), for approval of employment contracts for four of its employees. For the reasons stated below, we reverse.

### FACTS

On March 13, 1990, Debtor filed for relief under Chapter 11 of the Bankruptcy Code. At that time, Debtor was a commercial printer with its principal place of business in West Chicago, Illinois, and it was indebted to Glenfed Capital Corp. ("Glenfed") in the amount of $12.6 million. Glenfed's claim was secured by substantially all of Debtor's assets.

Debtor intended to operate for a short period of time in an effort to locate a buyer. If its efforts proved fruitless, Debtor and Glenfed would liquidate Debtor's assets. With this in mind, on March 29, 1990, Debtor entered into a Post–Petition Financing Order with Glenfed which provided that Debtor would stop accepting any new orders and only use its funds to complete existing orders.

Simultaneously with filing its petition for relief, Debtor negotiated with certain of its key managerial and executive personnel ("Employees") for their post-petition services. Debtor and Employees executed new employment contracts on March 13, 1990. These new contracts superseded the prior employment contracts between Debtor and Employees, and provided that Employees would remain in the employ of Debtor on a full-time basis for sixty days after the commencement of Debtor's bankruptcy case. In return, Debtor agreed to pay each employee a base salary as well as a contingent bonus payment. The bonuses were payable on the sixty-first day after the execution of the employment contracts to each employee who remained in the Debtor's employ for the sixty day period, and were to be equal to the total salary earned by that employee during that period.

The employment contracts also provided for a bonus pool to be funded by Glenfed. Each employee who remained in the employ of Debtor until disposition of Glenfed's collateral (Debtor's assets) would receive a

percentage of the bonus pool. The total amount of the bonus pool was to be between $100,000 and $300,000, depending upon the amount realized by Glenfed upon disposition of its collateral. The eligible employees would share pro rata in the bonus pool based upon their respective base salaries.

On April 2, 1990, Debtor filed a motion seeking approval of the employment contracts. Debtor alleged that retention of Employees was necessary to continue business operations and preserve the going concern value of the business. The Committee did not file a response to Debtor's motion.

On April 13, 1990, Bankruptcy Judge David H. Coar held a hearing on the motion. Debtor, Employees and the Committee presented no evidence in support of, or in opposition to, the motion. Rather, they relied on representations of counsel. At the end of the hearing, Judge Coar stated that he would have been "perfectly willing to hear live testimony" if such testimony had been presented. However, because notice of the hearing had been given, no witnesses were offered, and no request for a continuance had been made at the beginning of the hearing, the judge ruled "on the basis of representations by the lawyers." Transcript of April 13, 1990 Hearing before Judge Coar at 62.

Debtor's counsel articulated the following reasons for approving the contracts. First, Employees had negotiated the contracts in good faith and had performed valuable service for Debtor for over a month since executing the contracts. Employees rendered these services in reliance upon counsel's representations that court approval of the contracts would be sought. Second, if the court did not approve the contracts, Employees would no longer continue rendering services for Debtor. This would devastate Debtor because Debtor was still in the process of completing work on several large printing orders. Many of these orders were placed post-petition. Therefore, Debtor's inability to complete those orders on a timely basis would create substantial administrative liabilities. Third, Employees were needed to collect

outstanding accounts receivable and prosecute and defend various lawsuits. Finally, the compensation structure of the employment contracts was economically justifiable. The bonus payments at most would aggregate $76,000. Debtor and Glenfed asserted that the benefits associated with the bonus payments, namely, completion of the work in progress and collection of accounts receivable, far outweighed the total costs involved. The Committee did not object to the salaries or to the bonus pool funded by Glenfed. Further, the bonus payments were relatively small in comparison to the total compensation package of $376,000, which included the bonus pool. To the extent that Employees were successful in collecting accounts receivable, Glenfed's claim would be reduced and the unsecured creditors' share of the estate's assets would increase.

The Committee opposed the bonus payments primarily on the grounds that the employment contracts did not require Employees to work for Debtor for the time period necessary to collect accounts receivable. As of April 13, 1990, the employment contracts only required Employees to continue to work for an additional two weeks. The Committee argued that the services Employees were to render in those two weeks did not justify the bonus payments because the majority of the collection of Debtor's accounts receivable would take place after the expiration of the employment contracts.

The bankruptcy court approved the contracts, finding that the bonus payments were a reasonable amount to pay given the risks involved. The court stated:

Now, I'm going to approve these contracts. I think the $75,000 [bonus payments] given the risk is substantial but a reasonable amount to pay for that risk.... I think that there is an interplay between this bonus pool, as I understand it, and the $75,000 which suggests that there is an incentive on the part of these four employees to assist the debtor in both the completion of the contracts and in the winding down of this estate and the collection of receivables. I think

taken together it's a reasonable way to proceed.

Transcript of April 13, 1990, Hearing at 62–63.

The Committee argues on appeal that the bankruptcy court failed to apply the correct legal standard in granting Debtor's motion. According to the Committee, the bankruptcy court was under a duty to ensure that any transaction between a debtor-in-possession and its officers, directors or shareholders, is fair to the bankruptcy estate and the creditors. The Committee argues that the burden of proving the fairness of a transaction is on the debtor-in-possession's insiders. The bankruptcy court erred, the Committee claims, by failing to require the Employees to present any evidence in support of their motion.

## DISCUSSION

■ As debtor-in-possession, Debtor has the powers and duties of a bankruptcy trustee, subject to such limitations or conditions as the court prescribes. 11 U.S.C. § 1107(a). A "trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under [§ 503(b)(1) ] as an administrative expense." *Id.* § 364(a). If not in the ordinary course of business, the court, after notice and hearing, may authorize the trustee to obtain unsecured credit or incur unsecured debt allowable as an administrative expense. *Id.* § 364(b). Allowable administrative expenses include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." *Id.* § 503(b)(1)(A).

■ Officers and directors of a corporate debtor-in-possession are fiduciaries to the debtor and its creditors. *Wolf v. Weinstein,* 372 U.S. 633, 642–45, 649, 83 S.Ct. 969, 975–77, 979, 10 L.Ed.2d 33 (1963); *Pepper v. Litton,* 308 U.S. 295, 306–08, 60 S.Ct. 238, 245–46, 84 L.Ed. 281 (1939); *In re Club Dev. & Mgmt. Corp.,* 27 B.R. 610, 612 (9th Cir.BAP 1982); *In re Microwave Prod. of America, Inc.,* 100 B.R. 379, 382–83 (Bankr.W.D.Tenn.1989). Courts must scrutinize transactions between insiders

and the debtor-in-possession to ensure that the transactions are fair to the estate and creditors. *Pepper,* 308 U.S. at 308, 60 S.Ct. at 246; *In re Club Dev. & Mgmt,* 27 B.R. at 612; *In re Microwave,* 100 B.R. at 383; see *In re Lyon & Reboli, Inc.,* 24 B.R. 152, 154 (Bankr.E.D.N.Y.1982). The duty to scrutinize is compelling where, as here, there is no independent trustee to help ensure that the insiders' claims are fair. *In re Club Dev. & Mgmt,* 27 B.R. at 612. The insiders bear the burden of proving that the transaction is fair. *Pepper,* 308 U.S. at 306, 60 S.Ct. at 245; *In re Crouse Group, Inc.,* 75 B.R. 553, 557 (Bankr.E.D. Pa.1987).

■ Employees did not meet their burden of proving that their bonus payments were necessary to preserve the estate. The record consists solely of counsel's representations and thus is devoid of any evidentiary support for a finding that their claims were necessary for preserving the estate. See *In re Club Dev. & Mgmt,* 27 B.R. at 613 (where entire record consists of representations of counsel, there is no factual support for finding that salaries were necessary); see *In re Microwave,* 100 B.R. at 383 (allowance of an administrative expense requires a finding that expense is necessary for preserving the estate). Testimony under oath and based on personal knowledge should be required before transactions of the kind involved here are approved. At a minimum, there should have been testimony to support findings as to whether the Employees would have rendered the necessary services without the bonuses, and, if not, whether others could have been found to do the work at a lesser cost.

■ Debtor attempts to justify the administrative claims as an exercise of its business judgment. However, "business judgment is not a statutory ground for allowance of administrative expenses incurred out of the ordinary course of business," *In re Club Dev. & Mgmt,* 27 B.R. at 612, or in the ordinary course of business, 11 U.S.C. §§ 364(a), (b) & 503(b)(1).

Debtor also maintains that the Committee's appeal is moot because Employees fully performed the services contemplated by the employment contracts subsequent to the entry of the orders approving the contracts. We disagree. Employees' full performance under the contracts is irrelevant to whether their bonuses were necessary to preserve the estate. Finally, Debtor argues that the Committee waived its argument regarding the requirement of an evidentiary hearing because the Committee raised this argument for the first time on appeal. We do not find this argument persuasive. The burden was on Employees to prove that their salaries and bonuses were necessary for preserving the estate. They presented no evidence to that effect.[1]

## CONCLUSION

We reverse the bankruptcy court's orders approving the employment contracts, and remand for further proceedings consistent with this opinion.

---

**1.** The Committee's counsel may have inadequately protected the interests of Debtor's unsecured creditors by failing to demand an eviden-tiary hearing. In light of who bears the burden of proof, however, we see no reason to prejudice the unsecured creditors as a result.