**In re Henry GHERMAN, First Financial Planning Corporation of South Florida, Inc., Financial & Investment Planning, Inc. (aka) FIP, Inc., Debtors.**

**Bankruptcy No. 88–03266–BKC–TCB.**

United States Bankruptcy Court,
S.D. Florida.

Aug. 22, 1989.

See also, Bkrtcy., 105 B.R. 712.

2. Currently, there are a total of 838 docket entries.

Joel M. Aresty, Miami, Fla., for debtors Henry Gherman, First Financial Planning Corp., and Financial & Inv. Planning, Inc. (FIP, Inc.).

Ronald G. Neiwirth, Miami, Fla., for Joan Gherman, Shari Gherman Rance and Craig Gherman.

James S. Feltman, Miami, Fla., Chapter 11 Trustee.

Ronald R. Peterson, Jenner & Block, Chicago, Ill., John W. Kozyak, Miami, Fla., for Chapter 11 Trustee.

Schantz, Schatzman, Aaronson, P.A., Miami, Fla., for Chapter 11 Creditors' Committee.

Kevin C. Gleason, Acting Asst. U.S. Trustee, Miami, Fla.

Alec Wallace, State Court Successor Receiver, Miami, Fla.

Robert L. Koeppel, Mitchell K. Karpe, Timothy J. Norris, Weil, Gotshal, Manges, Miami, Fla., for Alec Wallace.

Weintraub & Rosen, P.A., Richey, Munroe & Fine, P.A., Miami, Fla., for Greenberg and Yahr.

Tew Jorden Schulte & Beasley, Miami, Fla., for Michaelson.

Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Miami, Fla., special counsel for trustee.

Wallace, Engels, Pertnoy, Solowsky, Newman & Allen, P.A., Miami, Fla., original counsel for state court receiver and trustee.

Heller and Kaplan, Miami, Fla., for claimant Rywlin.

Bailey & Hunt, Miami, Fla., for Ackroyd.

## ORDER ON FEE APPLICATIONS

THOMAS C. BRITTON, Chief Judge.

These three bankruptcies are administered jointly under Bankr. Rule 1015(b). (CP 5). Separate chapter 11 liquidation plans, jointly presented by the trustee and the creditors' committee, were confirmed on July 20, 1989. (CP 520). Fee applications were heard on July 10. A number of objections have been filed.

There are 13 applications, totalling $1.9 million for services that span the first eight months of this litigation. The three estates presently aggregate $3.4 million. The trustee has additional judgments and has some actions pending. He is also preparing lawsuits which, if successful, could recover enough to satisfy all claims. Future recoveries are necessarily speculative. It is possible, of course, that the maximum recovery has already been effected.

It is inappropriate, at this stage of these cases, to pay administrative fees exceeding half of the estate for work that is far from complete. In this Order, therefore, only those applications which will never be properly recoverable from these estates are disallowed. The remaining applications have been considered as having been made for *interim* allowances under 11 U.S.C. § 331. A total of $864,137 (25.4% of the existing estates) is approved for disbursement now.

Unless prevented by appeals of this Order, the trustee is instructed to make a partial distribution to creditors at the earliest practicable time.

After future notice and a hearing, *final* compensation (including reevaluation of the interim payments approved in this Order), will be fixed after most of the administrative effort required in these cases has been concluded and when the ultimate recovery can be estimated with some accuracy.

Of course, the administration of these cases is solely for the benefit of the debtors' victims. It is not for the benefit of the professionals hired to get the job done.

Every effort must be made, therefore, to control future administrative expenses.

The only way to stop accruing administrative expense is to conclude these cases. Therefore, every reasonable effort must be made to bring these matters to the earliest possible conclusion.

All applicants are also reminded, in the words of the Supreme Court, that in fixing fees, "The result is what matters." *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). Effort, both in time and money, should be expended cautiously. There is no assurance that *unavailing* effort will be compensated.

### History of the Case

Gherman, an insurance agent and financial consultant who did business through the two corporate debtors, which he had created and which he dominated, vanished suddenly on August 8, 1988 with $4.4 million of his clients' money in cash, leaving his business and his records in complete disarray. He was ultimately found and arrested in Taiwan. During December 1988, he was returned here, where he pled guilty to the embezzlement of at least $9.7 million and is now serving a 30-year federal sentence.

On August 10, 25 creditors, represented by the applicant Wallace, Engels, obtained the appointment of a State court receiver (the applicant Feltman) and a consensual freeze of the corporate assets and the assets of Gherman's family.

On August 15, the creditor/applicants Greenberg and Yahr, impatient with the apparent ineffectiveness of the efforts of Feltman and Wallace, Engels, retained an investigator, Black, and traced $3 million of Gherman's $4.4 million stolen exit money to a Swiss bank in Antigua. They also retained two Miami law firms, an Antiguan attorney, Christian, a London law firm, Titmuss, Sainer, and a Swiss consultant, and filed suit in the High Court of Antigua. They obtained a "freeze" order with respect to the targeted funds.

Though they now assure us that they sought recovery "for all creditors", Greenberg and Yahr sued solely for their own benefit. They made no effort to inform or get approval from either the State court or this court of any of their efforts. In October, when told by the trustee that their Antiguan efforts violated § 362(a), Greenberg and Yahr ended those efforts and, thereafter, cooperated with the trustee. The trustee filed suit on November 4 in Antigua, and recovered $787,271 on April 28, 1989.

On August 18, Wallace, Engels, on behalf of some of their original creditor/clients, filed these three bankruptcy petitions and on September 23, the U.S. Trustee appointed the State court receiver to serve as bankruptcy trustee for these three debtors. On November 14 Feltman was replaced by the applicant Wallace [1] as the State court receiver. Wallace retained the applicants Koeppel and Weil, Gotshal.

On October 7, this court approved the trustee's employment of the applicant, Stearns, Weaver as special counsel to assist in the recovery of the Antiguan funds. (CP 59).

On October 26 the trustee filed an action in the District Court (Greenberg 88–1983), to recover money allegedly owed to the estates. That action remains pending.

On October 28 and November 8 (CP 70, 79), the trustee replaced his original attorneys, who had recovered nothing for the creditors, with a small Miami firm and a large Chicago firm (the applicants Kozyak, Tropin and Jenner & Block).

On January 26, 1989, the State court action was removed to this court. The bankruptcy trustee intervened with a cross-claim against the defendants; the original complaint was voluntarily dismissed by the plaintiffs; and the matter was tried on March 2.

Seven other lawsuits have also been filed here by the trustee and concluded. (Chaska 88–0555; Ackroyd 89–0061; Madoff 89–0062; Clark 89–0069; Cook 89–0230; Fisher 89–0231; Orthosis Corp. 89–0248).

---

1. This Wallace has no connection with the Wallace in Wallace, Engels.

*State Court Successor Receiver and His Attorneys*

■ The successor State court receiver, Alec Wallace, appointed by the State court on November 14, 1988, and his attorneys, Koeppel and Weil, Gotshal have collectively applied for $57,006 in fees and costs from the bankruptcy estates. (CP 353c, 369a, 385). The applications are denied.[2]

By § 543, the custodian of property of a bankruptcy debtor is required to turn that property over immediately to the bankruptcy trustee and, in that event, this court is required, by § 543(c)(2), to "provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian."[3] Wallace and his attorneys recovered nothing and, therefore, turned over nothing to the bankruptcy trustee. They are entitled to nothing from the bankruptcy estates.

*Creditor Michaelson*

■ A general, unsecured creditor, Dr. E.D. Michaelson, has applied for $2,517 (CP 363). The sum represents his valuation of his time and expense in submitting to oral examination and producing documents as a lay witness during a deposition conducted March 1, 1989 in the removed State court litigation. He was one of several creditors whose rights were enforced in that action by the trustee under § 544.

Under § 503(b)(3)(D), a creditor may recover "actual, necessary expenses ... in making *a substantial contribution*" in a chapter 11 case. Virtually all litigation is dependent to some degree upon the testimony of and, therefore, the time and effort of, lay witnesses. A witness subject to a court's subpoena power, who voluntarily furnishes evidence, is simply performing a civic duty. This applicant's contribution as a lay witness was neither unusual nor remarkable. It was not, therefore, "substan-

tial" within the intended scope of the statute. The application is denied.

*Wallace, Engels*

This law firm represented 25 creditors in instituting the State court action, and subsequently, on behalf of three of those creditors, filed the involuntary bankruptcy petitions. It also obtained the appointment of, and represented, the original State court receiver, Feltman, and continued to represent him after his appointment as bankruptcy trustee, until the firm was replaced by Feltman with this court's approval. For these services and its expenses, the firm seeks $293,640 (CP 364).

*Services in State court.* The services in the State court are compensable under § 503(b)(4) if, but only if, those services have made "a substantial contribution" in these chapter 11 cases. By obtaining a prompt consensual freeze of asset transfers by the members of Gherman's immediate family, it is possible that this firm may have made a substantial contribution. However, although the trustee has secured a judgment (now on appeal), he has not yet recovered anything from any such assets. It is too early, therefore, to determine the value of the Wallace, Engels contribution. Compensation is denied now, without prejudice to reapplication *for those services* when the extent of the ultimate recovery, if any, is determinable.

■ *Services in Involuntary Proceedings.* Reasonable compensation for the firm's services in connection with the involuntary bankruptcy petitions, filed August 18, 1988 and adjudicated 35 days later without contest, is recoverable from the bankruptcy estates under § 503(b)(3)(A) and (b)(4). The reasonable value of those services, which in these three cases were nominal, was $1,000 and the associated expenses were $750. This applicant is entitled now to that compensation ($1,750).

---

2. The State court receivership was effectively terminated as a matter of law with the commencement of the bankruptcy cases on August 18, 1988, which, by § 541, created the bankruptcy estates and, by § 543, halted the State court administration of the debtors' estates, and required turnover to the bankruptcy trustee. Wallace was appointed three months after that date.

3. § 503(b)(3)(E) makes provision for the same compensation, but does not expand the liability of the bankruptcy estate.

The three clients apparently have paid nothing.

*Services as Trustee's counsel.* From August 26, 1988, when this firm's employment by the bankruptcy trustee was authorized (CP 31) until October 26, (61 days) when the firm was discharged by the trustee, the firm served as the trustee's counsel, and is, therefore, entitled to reasonable compensation under § 330(a) for its services and "actual, necessary expenses." The quality of the firm's representation, which was mediocre at best, was obviously affected by the departure of the only member of the firm with any prior bankruptcy experience.

Though the firm recovered nothing, it claims by its investigations to have laid the groundwork for future recoveries. The firm's claims are detailed expansively (CP 364) and challenged in detail (CP 492) by the firm's successors. The application for these services does not comply with Bankr. Rule 2016. It is denied now, without prejudice to its renewal, in proper form, *for those services*, when the trustee's ultimate recovery is determinable. This court will then resolve the dispute between the trustee's two firms as to their respective contributions.

In all other respect, the application of Wallace, Engels is denied.

### Creditors Greenberg and Yahr

■ The creditors Greenberg and Yahr have applied (CP 368, 429) under § 503(b)(3)[4] for $57,413. The applicants seek nothing for themselves, and there is no indication that they have paid any part of their agents' billings. The agents have made no separate applications.

I take it, therefore, that any allowance on this application is to be disbursed by Greenberg and Yahr to the applicants, and nothing in this Order is intended to diminish the agents' claims against their employers, Greenberg and Yahr.

4. Alternatively, the applicants (but not the trustee) ask retroactive approval under § 327(a) from this court of the employment of all of their agents as agents of the trustee. That approval is denied. The circumstances here do not fall

The applicants identify their "substantial contribution" as follows:

"there can be no question that had the monies in Antigua not been promptly frozen by GREENBERG AND YAHR, those monies would not have been available for the Bankruptcy Estate." (CP 368 at 6).

I agree and find that one-third ($4,512) of Black's charges represents the reasonable value of his services toward that contribution, and that all ($6,645) of Christian's charges and all ($1,638) of the Titmuss, Sainer charges represent the reasonable value of their services toward that contribution. Therefore, a total of $12,795 is payable now from these estates upon this application.

In all other respects, the application is denied. I find that the remaining services were beneficial primarily to Greenberg and Yahr and, therefore, are not "proper expenses for which compensation [is] due from the estate[s]." *Matter of Multiponics, Inc.*, 622 F.2d 731, 734 (5th Cir.1980).

### Special Counsel to Trustee, Stearns, Weaver

■ The trustee's employment of this firm was approved in October 1988 to assist in the recovery of the funds in Antigua. The firm was employed, because a member, Menendez, has special familiarity with the Swiss bank and Antiguan officials, and is an expert as to the Antiguan Bank Secrecy Act, which he helped draft. The firm has applied for $18,424. (CP 359).

Menendez' charges, $16,410 for 88.7 hours at $185 per hour, which are unopposed, are approved in light of his special qualifications. The firm's charge of $750 for preparation of its fee application is excessive and is reduced to $200. *Rose Pass Mines, Inc. v. Howard*, 615 F.2d 1088, 1092 (5th Cir.1980). The firm's expenses are approved in the reduced amount of $764. The firm's application for immediate payment from these estates is, therefore, approved in the amount of $17,374.

within this court's limited discretion to grant "nunc pro tunc" approval of the trustee's employment of professionals "under exceptional circumstances." *Matter of Triangle Chemicals, Inc.*, 697 F.2d 1280, 1289 (5th Cir.1983).

## Debtors' Attorneys

The application of Kelley, Drye (CP 365) seeks a total of $89,125 for its services as counsel for Gherman and for the debtor corporation, FIP, which he dominated, and for the services of Gherman's co-counsel Clark and Ferrell, which he employed to defend him against criminal charges. This application is made under § 503(b)(3)(D). (CP 365 at 2).

The "substantial contribution" asserted on behalf of these attorneys need not be repeated here. (CP 365 at 5–7).[5] I find that these services have provided no "substantial contribution" to the administration of these three bankruptcy estates. The services provided, while valuable to Gherman, were "beneficial primarily" to him, *Matter of Multiponics, supra.*

The application is denied, without prejudice, of course, to the claims of these able attorneys against Gherman.

## Trustee and his Accountants and Attorneys

The trustee, the accounting firm he employed, and the two law firms he has retained as general counsel, have applied collectively for a total of $1,304,014 (including expenses) *as interim fees* to April 30, 1989, eight months after the trustee's appointment (August 23, 1988). The interim fee requested by the trustee and his agents represents 40% of the total assets actually recovered during the period they cover.

As has already been noted, the trustee received substantial assistance from professionals employed by creditors and also retained additional special counsel in connection with the major recovery to date (the funds from Antigua).

Much of the effort which forms the predicate for these interim applications has yet to produce any funds for the bankruptcy estates. This is true, for example, of the litigation against Gherman and his family, the preparation of litigation against other parties which has not yet been filed, and the investigation of several real estate lim-

ited partnerships, which Gherman controlled as the general partner. The interim compensation requested collectively by the trustee and his agents is, therefore, disproportionate to the results they have achieved to date.

It is settled in this Circuit that interim awards should be "well below any possible final allowance." *In re Multiponics, Inc.,* 551 F.2d 1049, 1050 (5th Cir.1977); *In re TMT Trailer Ferry, Inc.,* 457 F.2d 100, 102 (5th Cir.), *cert. denied* 409 U.S. 849, 93 S.Ct. 57, 34 L.Ed.2d 91 (1972). These cases were decided under the former Act, but it is clear from the legislative history that the only intended effect of § 331 was to remove any doubt that interim compensation may be authorized. H.R. 595, 95th Cong., 1st Sess. 330 (1977); S.R. 989, 95th Cong., 2nd Sess. 41–2 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

*Interim* compensation at the rate of 60% of the total, including expenses, requested by the trustee and his accountants, and his two law firms, is authorized, as follows: Feltman $61,436; Holtz & Co. $166,963; Jenner, Block $426,944; Kozyak, Tropin $127,063.

## Creditors' Committee Counsel

Counsel for the creditors' committee, Schantz, Schatzman, whose employment was authorized October 4, 1988 (CP 57) have applied for $83,020, for its services and expenses to the date of the application, and reserve the right to apply again for future services (CP 367). The U.S. Trustee has pointed out (CP 497) that charges for services provided before employment was authorized and for duplicated services comprise 38.6% of the total fee requested.

This application is for interim compensation. It, too, is approved in the amount of 60%, or $49,812.

DONE and ORDERED.

---

**5.** With respect to Clark's services, this assertion was litigated in and rejected in Adversary Pro-

ceeding 89–0069.