**In re Ronald David NEESE and Susan Joy Neese, Debtors.**

**Bankruptcy No. SB 87–00541 LR.**

United States Bankruptcy Court, C.D. California.

Feb. 27, 1992.

Rosemarie F. Patterson, Patterson & Patterson, Whittier, Cal., for debtor.

Mark C. Schnitzer, Hanover & Schnitzer, San Bernardino, Cal., for trustee.

## MEMORANDUM OF DECISION DENYING DEBTORS' MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM

LYNNE RIDDLE, Bankruptcy Judge.

This matter came on to be heard on the motion of Ronald David Neese and Susan Joy Neese ("Debtors") for an order allowing a commission to Debtors, to be paid as an administrative expense, or in the alternative for an order reducing other administrative claims so that a distribution might be made to Debtors. Upon consideration of the evidence submitted with the motion, other pleadings in the file, and the authorities cited by the parties, the Court concludes that the relief requested by Debtors is not warranted by law.

### JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1334 (district courts have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (district courts may refer all Title 11 cases and proceedings to the bankruptcy judges for the district), and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges of the Central District of California). This action constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### FACTS

In 1985, Debtors commenced an action in San Bernardino Superior Court styled *Neese v. Loma Linda Medical Center, et al.,* for compensatory and punitive damages arising from an alleged wrongful discharge. Debtors retained counsel to represent them on a contingent fee basis and the suit "moved forward with vigorous discovery by both sides." (Declaration of Special Counsel in Support of Application to Compromise Disputed Claim, filed May 14, 1990, p. 4.)

On January 30, 1987, Debtors filed a voluntary petition for relief under Chapter 7; N.L. Hanover was appointed Chapter 7 Trustee ("Trustee"). Pursuant to 11 U.S.C. § 541(a), Debtors' interest in the state court action, including any potential award of damages, became an asset of the bankruptcy estate. Debtors believed their claims were meritorious and urged the Trustee to pursue the action on behalf of the estate. Toward that end, by Order entered May 3, 1988, Thomas P. Dovidio was employed as special counsel to the Trustee to prosecute the action.

The litigation was eventually resolved at a settlement conference in early 1989. During the course of the negotiations, Debtors, Mr. Dovidio and the Trustee spent considerable time analyzing the information in the bankruptcy schedules regarding the amount of claims against the estate in order to calculate what portion of the settlement would be available for distribution to Debtors. The Trustee estimated that creditor claims would total approximately $20,000, and trustee fees and administrative costs would be no more than $3,000. After factoring in Mr. Dovidio's attorney fees, the Trustee concluded that from the proposed settlement of $42,500, Debtors would receive between $4,000, at a minimum, and probably closer to $10,000, after payment of claims and administrative expenses. In order to assure that there would be a dividend to Debtors, Mr. Dovidio agreed to reduce his attorney fees from $13,267 to $10,000.

Debtors testified that they were told that a judge or jury would have awarded a much higher amount, but they agreed to the $42,500 settlement based on the Trustee's representation that they would receive a portion of the money. Debtors further declared that they would not have subjected themselves to the expense, effort and emotional stress associated with preparation of the case except for the Trustee's assurance that they would be compensated. (Declaration of Ronald Neese, filed Oct. 24, 1991, ¶¶ 5, 6.)

Notice of the proposed settlement was given to all creditors and no objection was received. Upon a hearing, the settlement was approved by this Court by Order entered June 11, 1990.

The Trustee filed the Final Report and Account on April 19, 1991. Unfortunately, it appears that, although creditors will be paid in full, there will be no money available for distribution to Debtors. Debtors are justifiably disappointed and brought a motion for an order allowing a distribution to them in the form of an administrative expense.

### DISCUSSION

1. *Commission under § 503(b)(1)(A)*

■ Debtors first claim that they are entitled to a "commission"[1] for services rendered to the estate under § 503(b)(1)(A).[2] Section 503(b)(1)(A) provides:

(b) After notice and a hearing, there shall be allowed administrative expenses, ... including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

The decision to award administrative expense priority rests within the broad discretion of the court, "limited by the clear intent of section 503(b)(1)(A): the actual and necessary costs of preserving the estate." *In re Dant & Russell, Inc.*, 853 F.2d 700, 707 (9th Cir.1988). "Actual" and "necessary" are narrowly construed in order to keep administrative expenses at a minimum. *Id.* at 706.

The modifiers "actual" and "necessary" must be observed with scrupulous care. Before incurring expenses, the trustee should conclude that they are absolutely necessary to preserve the estate. Preservation of the estate, however, should not be strictly interpreted. Thus, while there is an implicit duty incumbent on officers to preserve the estate or some part thereof for the benefit of creditors, preservation may also be a mere means to other ends in the administration of an estate such as the continuation of the business or immediate liquidation.

3 L. King, *Collier on Bankruptcy* ¶ 503.-04[1][a][i] at 503–24 (15th ed. 1991).

■ In addition, actual benefit must accrue to the estate. *In re Dant & Russell, Inc.*, 853 F.2d 700, 706 (9th Cir.1988). In the context of Chapter 11, the rationale for allowing administrative priority is to encourage creditors to continue doing business with the debtor postpetition. However,

"[s]ince the goal in a Chapter 7 case is to 'cash out' the bankrupt entity, rather than continue its operations, Chapter 7 is more concerned with maximizing the size of the estate to be distributed than with the Chapter 11 goal of inducing third parties to contribute towards the continued operations of the business."

*Id.* at 706–07 (quoting *Broadcast Corp. v. Broadfoot*, 54 B.R. 606, 611 (N.D.Ga.1985)).

■ At first blush, Debtors' argument has some appeal. As Collier noted, the Code makes no attempt

to enumerate specifically all of the potential items of expense which could constitute "the actual, necessary costs and ex-

---

**1.** Debtors suggest that a reasonable commission for their efforts is 15% of the settlement, or $6,375, plus actual expenses. (Motion for Order Granting Administrative Claim, filed Oct. 7, 1991, p. 5.)

**2.** References to section numbers are references to sections in the Bankruptcy Code, Title 11 U.S.C.

penses of preserving the estate" save that this includes wages, salaries or commission for services rendered after the case has been begun by the filing of a petition.

3 L. King, *supra*, ¶ 503.04[1][a][i] at 503–19. The Trustee may hire labor, including former personnel or the debtor himself, to preserve the estate or operate the business pending liquidation. *Id.* ¶ 503.04[1][a][iii] at 503–28. However, "such employment will be subject to extensive scrutiny" and "the employment must be necessary and actual to merit status as an administrative expense." *Id.* at 503–28.1.

Debtors contend that they conferred benefit on the estate by assisting the Trustee in recovering property, thus maximizing the estate to the point that all creditors will be paid. The Court acknowledges that the estate had no other assets to satisfy creditors, and that without Debtors' assistance the claims might not have settled at the amount ultimately approved by the Court. (*See also* Declaration of N.L. Hanover, filed Oct. 28, 1991, p. 2.)

Nevertheless, the fact that Debtors conferred benefit on the estate does not resolve the administrative expense issue. The Court must further find that the value of Debtors' services was an "actual" and "necessary" expense to the estate within the meaning of § 503(b)(1)(A).

Debtors acknowledge the absence of case authority for their position on these facts.[3] This Court concludes that the value of Debtors' services was not a "necessary" expense because those services were already pledged to the estate by the act of filing bankruptcy. *In re Roco Corp.*, 37 B.R. 770, 773 (Bankr.D.R.I.1984) (principal

of corporate debtor was not entitled to administrative claim for services rendered to trustee since services were required by § 521 with no right of compensation).

█ The assistance given by Debtors was no more than that required of them by § 521, which provides:

The debtor shall—

\*    \*    \*    \*    \*    \*

(3) if a trustee is serving in the case, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title;

(4) if a trustee is serving in the case, surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate, . . .

This section is supplemented by Bankruptcy Rule 4002, which lists specific duties of the debtor, including the duty to "cooperate with the trustee in . . . the administration of the estate; . . . ." The duties imposed by § 521 are affirmative obligations. *E.g., In re Sowers*, 97 B.R. 480, 487 (Bankr. N.D.Ind.1989); W. Norton, *Norton Bankruptcy Law and Practice Rules and Official Forms* 274 (1991) (Editor's Comment to Rule 4002).

The nature of debtor's cooperation is coextensive with the tasks to be performed by the trustee in administering the estate.

An examination of the duties of a trustee serving under chapter 7, 11 or 13 will disclose wherein the debtor can cooperate with the trustee in the performance of his duties. The trustee, in a liquidation case, is required to collect and reduce to money the property of the es-

---

**3.** The Court found two cases in which non-debtors requested administrative priority for expenses incurred in preparing for litigation; in both cases the administrative claim was denied. A creditor in *In re Gherman*, 105 B.R. 714, 717 (Bankr.S.D.Fla.1989), submitted a claim under § 503(b)(3)(D), which authorizes an administrative claim for expenses incurred by a creditor in making a substantial contribution to a Chapter 11 case. The creditor sought to recover the value of his time and expense in submitting to examination and producing documents in the trustee's action to recover property for the es-

tate. The court disallowed the claim, in part because the creditor was subject to subpoena and his voluntary production of evidence was consistent with his civic duty.

In *In re Club Dev. & Management Corp.*, 27 B.R. 610, 613 (9th Cir.BAP 1982), principals of the corporate debtor requested salaries from the estate as compensation for, among other things, their cooperation in litigation. The court concluded that the principals would be harmed if they did not assist in the litigation and therefore it was unlikely that they would be uncooperative. Accordingly, salaries were not necessary.

tate. The debtor may well cooperate in this respect, informing the trustee of and assisting him in locating property of the estate in the possession of third parties, executing documents necessary to convey property and assisting in the collection of accounts receivable.... "Cooperate" is a broad term, indeed, and must be construed that whenever the trustee calls upon the debtor for assistance in the performance of his duties, the debtor is required to respond.... [Debtors] meet the requirement of section 521(3) if they cooperate to the best of their ability.

3 L. King, *supra*, ¶ 521.10 at 521–53.

■ Debtor's cooperation is so essential, that it can be a prerequisite to a grant of discharge. *E.g., In re Dreyer*, 127 B.R. 587, 595 (Bankr.N.D.Tex.1991) (debtor failed to provide complete financial information to trustee); *In re Sowers*, 97 B.R. 480, 487 (Bankr.N.D.Ind.1989) (debtor failed to turn over property of estate to trustee); *In re McDonald*, 25 B.R. 186, 189 (Bankr.N.D.Ohio 1982) (debtor failed to provide tax return to trustee; court noted that in the past, failure to cooperate was characterized as "bankruptcy crime"). Moreover, debtor's duty to cooperate does not end when discharge is granted. *In re Albers*, 80 B.R. 414, 417 (Bankr.N.D.Ohio 1987) (debtor had continuing duty not to destroy documents after discharge granted); *see In re James*, 77 B.R. 174, 177 (Bankr.S.D.Ohio 1987) (discharge revoked, in part because debtor failed to provide financial information to trustee).

■ Although Debtors do not describe the services provided to the Trustee, their function was primarily to provide evidence to support the factual basis of the state law claims.[4] This is consistent with Debtors' duty to provide information to the Trustee under § 521(3) and (4). In fulfilling this duty, Debtors expended money for telephone calls and travel to meet with special counsel and the Trustee. Yet Debtors are not entitled to compensation for

fulfilling their duties under § 521. *In re Roco Corp.*, 37 B.R. 770, 773 (Bankr.D.R.I. 1984). In exchange for their time and trouble, Debtors received a discharge of their debts and a fresh start. Debtors voluntarily submitted themselves to the protection of this Court; they must also bear the inconvenience that attends that protection.

## 2. *Custodian under § 503(b)(3)(E)*

■ 503(b)(3)(E) provides,

(b) After notice and a hearing, there shall be allowed administrative expenses, ... including—

(3) the actual, necessary expenses, ... incurred by—

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian.

A custodian is defined in § 101(11) to include a

(C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

Debtors contend that they were acting as agents who exercised effort to benefit debtors' creditors.

Debtors' argument, although creative, is without merit since all the elements of the § 101(11)(C) definition are not satisfied. Debtors were not appointed nor authorized by any contract or other law. Debtors did not "take charge" of the "property," i.e., the state court litigation, and did not "generally administer" the litigation for the benefit of creditors. The Code instead authorized the Trustee to "take charge" of the litigation and reduce the claims to money. 11 U.S.C. § 704. Debtors simply fulfilled their obligations under § 521 by assisting the Trustee and special counsel in reducing "property" of the estate to money.

**4.** Some of the expenses Debtors incurred appear to relate solely to the bankruptcy case, rather than to assisting Mr. Dovidio in the preparation of the state court action. For example, Debtors

claim mileage for several trips to the Trustee's office and the bankruptcy court, as well as telephone calls to the Trustee.

802

## CONCLUSION

The Court sympathizes with Debtors' situation, as does the Trustee. (Declaration of N.L. Hanover, filed Oct. 28, 1991, page 3). Unfortunately, the Code does not authorize payment to Debtors under these circumstances. Debtors are not entitled to an administrative claim under either § 503(b)(1)(A) or § 503(b)(3)(E). Nor have Debtors pointed to any authority or justification for reducing other approved administrative claims.

Based upon the foregoing, the Court has made an order that Debtors' Motion for Order Granting Allowance of Administrative Claim, or Alternative Relief, is DENIED, and Debtors' Opposition to Proposed Distribution is OVERRULED.

A separate order is being filed concurrently herewith.