IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-3581
_____

IN RE UNITED STATES ABATEMENT CORPORATION,
a/k/a U.S.A. Corp.,

                              Debtor

UNITED STATES ABATEMENT CORP.,
a/k/a  U.S.A. Corp.,

                              Appellant,


        v.


MOBIL EXPLORATION & PRODUCING U.S., INC.,
as agent for Mobil Oil Exploration & Producing Southeast, Inc.
and Mobil Exploration and Producing North America, Inc.,

                              Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

(November 23, 1994)

Before KING, JOLLY, and STEWART, Circuit Judges.

KING, Circuit Judge:

     This appeal involves the question whether a bankruptcy

court, upon motion of a Chapter 11 debtor,  may equitably

subordinate the claim of a creditor who exercised a contractual

right to recoup from the debtor sums it became obligated to pay

to other creditors who had filed liens against the recouping

creditor's property.  The debtor contended that the exercise of

the right of recoupment constituted an inequitable exercise of

control over the debtor, forcing the debtor into bankruptcy, all to the detriment of other creditors.  The bankruptcy court held that the exercise of a contractual right of recoupment did not amount to a type of inequitable conduct that could form the basis for equitable subordination and dismissed the debtor's claim for equitable subordination under Rule 12(b)(6).  The district court affirmed.  We also affirm.

## I.  FACTUAL AND PROCEDURAL HISTORY

On March 13, 1992, United States Abatement Corporation ("USA") filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code.  On April 20, 1992, Mobil Exploration and Producing U.S., Inc. ("Mobil") filed a timely unsecured nonpriority Proof of Claim in the amount of $365,000, asserting that Mobil had a contractual right to indemnification from USA for amounts expended to pay off the liens of subcontractors.[1] These liens had attached to Mobil's property when USA failed to pay subcontractors who provided services pursuant to two contracts between USA and Mobil calling for USA to sandblast and paint certain structures belonging to Mobil located on the Outer Continental Shelf.

---

[1] Our opinion in a related appeal, also decided today, describes in greater detail the relationship between USA and Mobil and the circumstances that led to this litigation.  See United States Abatement Corp. v. Mobil Exploration & Producing U.S., Inc. (In re United States Abatement Corp.), No. 93-3582, ___ F.3d ___, slip op. at _____ (5th Cir. 1994).

On June 15, 1992, USA filed a complaint seeking equitable subordination of Mobil's claim. Mobil responded by filing a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure asserting that USA had failed to state a claim upon which relief could be granted. USA filed an amended complaint on November 6, 1992, in which it set forth additional facts in support of its equitable subordination claim. Specifically, USA contends that the facts set forth in its amended complaint establish that Mobil exercised control over the financial affairs of USA to such an extent that USA's other creditors were harmed thereby.

On November 13, 1993, the bankruptcy court granted Mobil's motion to dismiss USA's equitable subordination claim. On August 4, 1993, the district court entered judgment affirming the bankruptcy court's decision. In re U.S. Abatement Corp., 157 B.R. 590 (E.D. La. 1993). USA filed a timely appeal to this court, asserting two points of error: (1) the bankruptcy court erred in addressing USA's equitable subordination action prior to determining whether Mobil held a valid claim against USA's estate; and (2) the bankruptcy and district courts erred in concluding that USA had failed to state a claim justifying equitable subordination.

## II.  STANDARD OF REVIEW

A dismissal for failure to state a claim is disfavored in the law and justified only if it appears beyond doubt that the

3

plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Carney v. Resolution Trust Corp., 19 F.3d 950, 954 (5th Cir. 1994); Mahone v. Addicks Util. Dist. of Harris County, 836 F.2d 921, 926 (5th Cir. 1988). In evaluating the propriety of a dismissal, we accept the plaintiff's well-pleaded facts as true. Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994); Shushany v. Allwaste, Inc., 992 F.2d 517, 520 (5th Cir. 1993). Furthermore, the question of whether a creditor's conduct is so egregious as to require the remedy of equitable subordination is a question of law, over which an appellate court may exercise plenary review. Smith v. Associates Commercial Corp. (In re Clark Pipe & Supply Co.), 893 F.2d 693, 699-700 n.5 (5th Cir. 1990).

### III. ANALYSIS

In order properly to assess USA's claim of equitable subordination, it is helpful to summarize the key provisions of the two contracts between Mobil and USA. Both contracts contained three relevant clauses: (1) a termination clause; (2) an indemnification clause; and (3) a retainage clause. The termination clause stated, "Company [Mobil] reserves the right to terminate this contract with or without cause at any time." The termination clause also contained a provision for calculating compensation due to USA should Mobil exercise its right to terminate the contracts. Thus, the termination clause on its

4

face permitted Mobil to terminate the contracts for any reason, yet ensured that USA would be compensated for any work it had completed up until the time of termination. The bankruptcy court in this case concluded that the termination clause was valid under Louisiana law. See American Waste and Pollution Control Co. v. Jefferson Davis Parish Sanitary Landfill Comm'n, 578 So. 2d 541 (La. Ct. App. 1991), cert. denied, 581 So. 2d 694 (La. 1991) (enforcing termination clause on grounds that "[a] written contract between two parties is the law as to those parties and the courts are bound to enforce the contract as written."). USA does not contest the bankruptcy court's legal conclusion that the termination clause is fully enforceable as written.

The two contracts between Mobil and USA also contained an indemnification clause which read:

> Contractor [USA] further agrees to pay Company [Mobil] for damages to its property *and to indemnify and hold Company harmless against the payment of any and all taxes, penalties, interest, liens or indebtedness or claims against its property*, or for work performed, or measured by the work performed, growing out of or incident to Contractor's operations hereunder.

(emphasis added).

The contracts also contained a retainage clause whereby Mobil was authorized to withhold thirty percent of money due to USA as leverage to ensure that USA paid off all subcontractors who might assert liens against Mobil's property. The bankruptcy court concluded that the indemnification clause was unambiguous and enforceable as written, rejecting USA's argument that the retainage clause superseded the indemnification clause by placing

5

a "cap" of thirty percent on the amount to which Mobil was contractually entitled to recoup from USA to clear its property of subcontractors' liens. The bankruptcy court reasoned that while the retainage clause provided Mobil with prophylactic protection against the formation of liens, the indemnification clause provided additional protection by explicitly granting Mobil a right of full indemnification should any subcontractors' liens actually materialize. USA does not contest the bankruptcy court's interpretation of the relationship between the indemnification and retainage clauses.

The bankruptcy court concluded that under the terms of the two contracts between USA and Mobil, Mobil was entitled to recoup the full amount of all subcontractors' liens paid and owing on its property against the amounts due to USA under the contracts. Thus, of the $692,099 owed by Mobil to USA under the contracts, the bankruptcy court found that Mobil could subtract $607,052.82, the amount Mobil paid or owed subcontractors who had filed liens against Mobil's property. Mobil's total remaining obligation to USA on the contracts was therefore $85,046.18.[2]

USA's first argument on appeal is that the bankruptcy court erred in deciding the request for equitable subordination prior to deciding whether Mobil had a valid claim against USA's estate. In other words, USA believes the bankruptcy court "put the cart before the horse" by deciding that there was no reason to invoke

---

[2] The bankruptcy court noted that because USA had assigned all of its accounts receivable to Delta Bank, the $85,046.18 owed to USA actually belonged to Delta.

equitable subordination of Mobil's claim because the bankruptcy court never determined that Mobil had a valid claim against USA's estate in the first place.  USA asserts that the bankruptcy court's order of addressing these issues deprived it of a full panoply of litigation choices.  Specifically, USA contends that if the bankruptcy court first had addressed the issue of whether Mobil had a valid claim, USA would have been in a better position to evaluate the propriety of pursuing its equitable subordination claim.  We find this contention to be without merit.

We initially note that the bankruptcy court's determination as to what order it should address motions before it is a matter best left to its sound discretion.  <u>Landis v. North Am. Co.</u>, 299 U.S. 248, 254 (1936) (acknowledging "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for the litigants.  How this can best be done calls for the exercise of judgment . . . .").  There is no requirement in the Bankruptcy Code, Bankruptcy Rules or case law that a bankruptcy court address the merits of a pending claim prior to disposing of a motion for equitable subordination.[3]  Thus, an appellate court

---

[3]  In fact, the resolution of a claim for equitable subordination -- particularly when the amount owed by the debtor could represent a material portion of the debtor's liabilities -- may foster the expeditious and orderly structuring of the reorganization plan.  The same can often be said for a claim that related debtors should be substantively consolidated.  It may be desirable for the bankruptcy court to resolve such claims as early as possible.

We also note that the speedy resolution of USA's equitable subordination claim was not, and was not alleged to be, part of a subterfuge to avoid the mechanisms and protections of Chapter 11;

7

should be loathe to substitute its judgment for the bankruptcy court regarding such matters of docket management absent an abuse of discretion. In re Stone, 986 F.2d 898, 903 n.3 (5th Cir. 1993) (noting that decisions regarding docket management are subject to an abuse of discretion standard); accord Penn v. Iowa State Bd. of Regents, 999 F.2d 305, 307 (8th Cir. 1993) ("District courts have the duty and power to manage their dockets and we will not interfere in the absence of an abuse of discretion.").

Other than its allegation that the bankruptcy court's prioritization of these issues deprived it of maximum litigation choice, USA offers no facts to indicate an abuse of discretion. It is important to note that the bankruptcy court's chosen order of resolving these claims did not deprive USA of the opportunity to litigate the question of whether Mobil held a valid claim; rather, the validity of Mobil's claim was simply resolved later than USA would have preferred. USA also fails to recognize that the swift disposition of the equitable subordination claim was at least partially dictated by USA's own act of filing a motion for equitable subordination before the bankruptcy court had determined whether Mobil held a valid claim. Thus, it appears that USA is asking us to characterize the bankruptcy court's decision on the equitable subordination motion as an abuse of discretion because it was arrived at too expeditiously. We

_____

thus, the so-called Braniff doctrine is inapposite. See Pension Benefit Guaranty Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.), 700 F.2d 935, 940 (5th Cir. 1983).

8

decline the invitation to condemn lower courts for promptly resolving the issues before them.

The second issue raised in this appeal is whether the bankruptcy and district courts erred in determining that USA's request for equitable subordination of Mobil's claim lacked merit. After a careful review of the record, we agree with the lower courts that there is no basis for equitably subordinating Mobil's claim.

The law of equitable subordination in this Circuit is well established. The judicially-created doctrine of equitable subordination is presently codified at 11 U.S.C. § 510(c).[4] While § 510(c) does not specify the circumstances under which equitable subordination may be imposed, the legislative history of that section reveals that Congress intended it to encompass existing common law principles. See S. Rep. No. 989, 95th Cong., 2d Sess., at 74, *reprinted in* 1978 U.S.C.C.A.N. 5787; accord Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.), 926 F.2d. 1458, 1464 (5th Cir. 1991); Holt v. FDIC (In re CTS Truss, Inc.), 868 F.2d 146, 148 (5th Cir. 1989).

Equitable subordination is a remedial, not penal, measure which is used only sparingly. In re Fabricators, Inc., 926 F.2d

---

[4] Section 510(c) provides in relevant part:

(c) . . . after notice and a hearing, the court may--
        (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim . . . .

11 U.S.C. § 510(c).

at 1464.  This court has established a three-prong test to identify those situations in which equitable subordination is permitted: (1) the claimant must have engaged in some type of inequitable conduct; (2) the conduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant; and (3) the invocation of equitable subordination must not be inconsistent with the provisions of the Bankruptcy Code. In Re Fabricators, Inc., 926 F.2d at 1464-65; Smith v. Associates Commercial Corp. (In re Clark Pipe & Supply Co.), 893 F.2d 693, 699 (5th Cir. 1990); Benjamin v. Diamond (In re Mobile Steel Co.), 563 F.2d 692, 700 (5th Cir. 1977).

While our three-pronged test appears to be quite broad, we have largely confined equitable subordination to three general paradigms:  (1) when a fiduciary of the debtor misuses his position to the disadvantage of other creditors; (2) when a third party controls the debtor to the disadvantage of other creditors; and (3) when a third party actually defrauds other creditors. Holt v. FDIC (In re CTS Truss, Inc.), 868 F.2d 146, 148-49 (5th Cir. 1989) (citing cases).  The first paradigm is inapplicable in this case because USA has offered no facts to establish that Mobil had a fiduciary obligation to USA.  Mobil was merely in a contractual relationship with USA, not a relationship of trust which would give rise to mutual fiduciary duties.[5]  The third

---

[5] USA's only allegation of the existence of a fiduciary relationship appears in its brief, which asserts that because Mobil was a recipient of services who failed to pay for services rendered, it "can in fact, or should in fact, become a fiduciary to USA because of its control and domination over the debtor."

paradigm is inapplicable because USA has not alleged that Mobil defrauded USA or its creditors. Thus, USA's equitable subordination claim rests upon the second paradigm; specifically, USA asserts that Mobil controlled USA to the detriment of other creditors.

USA's only factual basis for asserting that Mobil controlled USA to the detriment of other creditors is that Mobil refused to pay certain sums due under the two contracts. USA further asserts that the sums due were "not under a bona fide dispute" because USA had substantially completed certain structures, Mobil had no complaints about the quality of the work performed, and the contracts called for structure-by-structure payment. Because the sums due under the contracts with Mobil represented all (or virtually all) of the income flow of USA, USA contends that Mobil's non-payment resulted in detriment to other creditors. More specifically, USA contends that Mobil's non-payment effectively forced USA to pay off certain subcontractors who had placed liens on Mobil's property to the detriment of Delta Bank,

---

Thus, USA appears to assert that the mere existence of control or domination over the debtor gives rise to a fiduciary relationship. Such a theory would not only make the control paradigm superfluous, but would also turn the law of fiduciary relationships on its head. It is hornbook law that a fiduciary relationship arises when one party has a duty to act for the benefit of the other party as to matters within the scope of the relationship. See AUSTIN WAKEMAN SCOTT & WILLIAM FRANKLIN FRATCHER, 1 THE LAW OF TRUSTS § 2.5, at 43 (4th ed. 1987); RESTATEMENT (SECOND) OF AGENCY § 13, cmt. a (1958). Classic examples of fiduciary relationships are agent/principal, attorney/client, and guardian/ward. As a mere party to a contract for services, Mobil was not in a fiduciary relationship with USA because Mobil had no duty to act for the benefit of USA.

to whom USA had assigned all its receivables, and to the detriment of other unsecured creditors who were not in a position to place liens on Mobil's property.

We know of no cases (and USA cites none in its brief) in which the exercise by one party to a contract of a contractual right to withhold payment occasioned by the breach by the other contracting party of that contract has been considered the type of inequitable "control" which would justify equitable subordination.  Indeed, in an analogous case, <u>Smith v. Associates Commercial Corp. (In re Clark Pipe & Supply Co.)</u>, 893 F.2d 693 (5th Cir. 1990), we held that a lender's reduction of available funds to a borrower (a subsequent Chapter 7 debtor) in a revolving line of credit was not the type of unconscionable conduct which would constitute "control" sufficient to invoke equitable subordination.  We reached this conclusion based primarily upon the fact that the contract between the lender and borrower expressly permitted the lender to reduce available funds according to the level of the borrower's accounts receivable.  Because the lender had merely exercised his contractual right to reduce the available funds when the borrower's accounts receivable declined, there was not, absent more, any inequitable conduct to invoke equitable subordination.  As we explained:

> Associates' control over Clark's finances, admittedly powerful and ultimately severe, was based solely on the exercise of powers found in the loan agreement.  Associates' close watch over Clark's affairs does not, by itself, however, amount to such control as would justify equitable subordination. . . . Although the terms of the agreement did give Associates potent leverage over Clark, that agreement did not give Associates total control over Clark's

12

activities.  At all material times Clark had the power to  act autonomously and, if it chose, to disregard the advice  of Associates; for example, Clark was free to shut its doors  at any time it chose to do so and to file for bankruptcy.

In re Clark Pipe & Supply Co., 893 F.2d at 702.

In this case, Mobil had the contractual right to recoup from the amount due to USA the amount of any liens placed on Mobil's property by USA's subcontractors.  Because USA disputed this recoupment right, there was a bona fide dispute among the parties as to what amount (if any) Mobil owed USA under the contracts. In order to resolve this dispute, Mobil filed a declaratory judgment action and withheld payment to USA pending resolution of this matter by the courts.  While Mobil's withholding of payment certainly created economic hardship for USA, the act of withholding was made pursuant to Mobil's contractual right to do so.  Thus, as in Clark Pipe, Mobil's actions created economic leverage to force USA to pay off the subcontractors who had filed liens on Mobil's property prior to paying off other creditors. Yet this economic leverage, asserted by Mobil pursuant to the terms of the contracts, did not give Mobil inequitable control over USA.  Because the behavior of Mobil which USA complains of would not support a finding of inequitable conduct by Mobil, we agree that dismissal of USA's equitable subordination claim for failure to state a claim was proper.

## IV.   CONCLUSION

13

For the foregoing reasons, we AFFIRM the judgment of the district court.