In re Julien J. HOHENBERG, Debtor.

Mary M.G. HOHENBERG, Adam E. Hohenberg, Laetitia Hohenberg De La Beaumelle, Juliet Hohenberg Wischmeyer, and HMF Trust, Plaintiffs,

v.

Julien J. HOHENBERG, Defendant.

Allen S. BLAIR, Trustee, Plaintiff,

v.

Julien J. HOHENBERG, Defendant.

Bankruptcy No. 91–20777–B (man).
Ad. Nos. 95–1038, 95–1037.

United States Bankruptcy Court,
W.D. Tennessee.

Jan. 19, 1996.

Kathleen J. Caldwell, Taylor, Halliburton, Ledbetter & Caldwell, Memphis, Tennessee, for Julien J. Hohenberg.

Allen S. Blair, J. Alan Hanover, Michael E. Goldstein, Hanover, Walsh, Jalenak & Blair, Memphis, Tennessee, for Allen S. Blair, Trustee.

John W. McQuiston, II, Evans & Petree, Memphis, Tennessee, for HMF Trust.

David J. Harris, Burch, Porter & Johnson, Memphis, Tennessee, for Jack F. Marlow.

Robert E. Orians, Martin, Tate, Morrow & Marston, Memphis, Tennessee, for Bankers Trust Co.

William M. Gotten, Russell Savory, Memphis, Tennessee, for Julien J. Hohenberg.

Julie C. Chinn, Assistant U.S. Trustee, Memphis, Tennessee.

## MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT FILED IN TWO ADVERSARY PROCEEDINGS AND ON TRUSTEE'S OBJECTIONS TO DEBTOR'S ADMINISTRATIVE CLAIMS

WILLIAM H. BROWN, Bankruptcy Judge.

Before the Court are three motions for summary judgment and the responses filed thereto by the debtor, who is also the defendant in the two adversary proceedings. Because the resolution of the three motions involve the same or related issues of law and because each of the motions is supportive of the other motions in the ultimate relief sought, the Court joined the motions for oral argument purposes, and the Court will address each of the motions in one opinion, with three separate orders to be entered.

The two adversary proceedings seek equitable subordination of the debtor's administrative expense claims to the claims of other unsecured creditors, with the case trustee's complaint seeking subordination to the claims of all other creditors, and the other adversary proceeding's plaintiffs seeking subordination to the claims of only those plaintiffs. However, it is not disputed that the claims of the plaintiffs in adversary proceeding number 95–1038 exceed the amount of assets available for distribution after payment of priority and administrative claims. Thus, the subordination of the debtor's administrative claims to only those plaintiffs effectively would have the same result as subordination to all other creditors.

Therefore, an issue common to these two adversary proceedings is whether there is cause for equitable subordination of the claims of the debtor against this estate. Section 510(c) of the Bankruptcy Code and equitable principles employed under that section of the Code will be applicable. The equitable subordination proponents assert that subordination would moot the necessity of deciding the allowance of the two administrative claims filed by the debtor. The debtor asserts that allowance of his claims must be decided first.

The second major issue is presented in the trustee's objection to the allowance of the two administrative claims filed by the debtor. A trial on the allowance of those claims is set on January 24, 1996; however, the trustee's summary judgment motion asserts that there are no genuine issues of material fact in dispute and that as a matter of law the debtor's claims must be disallowed.

Each of the summary judgment motions rely upon prior factual findings made in this case by this Court; thus, issues of preclusion predominate the outcome of the three motions.

The following opinion contains findings of fact and conclusions of law pursuant to FED. R.BANKR.P. 7052 and 7056. The issues before the Court are presented in core proceedings and contested matters. 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O).

### BACKGROUND FACTS

This case has a history before this Court, beginning as a voluntary chapter 11 case on January 18, 1991, with the present debtor, Julien J. Hohenberg, acting as debtor in possession. Mr. Hohenberg was represented in the chapter 11 phase of this case by the law firm of William L. Norton, Jr., and its successor firm Norton and D'Agostino. This Court by a July 26, 1994 Order, and after

notice and hearing, has approved the final fees and expenses of that firm, which does not represent the chapter 7 debtor.

Upon motions filed by the case trustee in the related case of The Julien Company, case number 90–20283, by Bankers Trust Company ("BTCo"), and by the United States Trustee, and after an evidentiary hearing on June 17, 1993, the Court made specific and numerous findings of fact, and an Order converting the chapter 11 case to one under chapter 7 was entered on June 17, 1993. One effect of the conversion was, of course, to remove the debtor in possession, and after the United States Trustee appointed an interim trustee, the creditors elected another person as chapter 7 trustee. *See* 11 U.S.C. § 702. After a contest over that election was heard, the Court confirmed the creditors' election, and Mr. Allen S. Blair has served as the chapter 7 trustee since the Court's August 3, 1993 Order. Mr. Blair has been liquidating assets and participating actively in litigation in this case.

There has been extensive litigation activity in both this case and in the related Julien Company case, but both cases are proceeding toward distributions and winding down of the trustees' administrations. In fact, in this case, the Court recently has approved significant settlements between the trustee and the Internal Revenue Service, as well as between the trustee and the former spouse of the debtor. *See* adversary proceedings number 94–0019, 91–0297, and 94–0123. The determination of that complex tax litigation had been a condition precedent to a determination of whether funds would be available for any other creditors. With the settlement of those adversary proceedings, there is a "global" settlement between the two trustees and principal creditors in both cases, which has been approved conditionally, and that "global" settlement would permit final distribution on allowed claims in both bankruptcy cases. There was an appeal by the debtor, Mr. Hohenberg, to this Court's approval of the "global" settlement. This Court's Order approving the settlement was affirmed by the United States District Court, and this Court was advised at a prior hearing by the debtor's counsel that Mr. Hohenberg has

withdrawn his appeal in the Court of Appeals for the Sixth Circuit. However, the "global" settlement between the two case trustees, BTCo, and the plaintiffs in adversary proceeding number 95–1038, can not be implemented in the absence of an agreed upon amount of funds for distribution. Mr. Blair has succeeded in achieving the monetary goal of those parties to the "global" settlement; however, should there be a distribution on the debtor's two administrative claims, the "global" settlement likely would fail. That failure would result in additional expenditures of legal and other professional fees, including for this estate to litigate disputes between the parties to the "global" settlement. One group of parties to that "global" settlement, and the plaintiffs in adversary proceeding number 95–1038, are adult children of the debtor by his first marriage and the beneficiaries of HMF Trust, which was created by the debtor in 1988. For convenience, those plaintiffs will be referred to hereinafter as HMF.

On December 30, 1993, six months after the conversion, the debtor filed two administrative claims against this estate. One claim, number 87, is for attorney fees in the amount of $428,765.05, which includes the debtor seeking personal reimbursement for $350,000 in retainer fees that he paid prepetition to the Norton law firm from two of his IRA accounts. Mr. Hohenberg also seeks recovery of accrued interest of $78,765.05. The other claim, number 86, in the amount of $593,966.77, is for management and other fees for services alleged to have been provided to the estate by the debtor while he was debtor in possession. On June 17, 1994, the trustee filed an objection to the allowance of these claims, and on September 19, 1995, the trustee filed an amended objection. Pretrial conferences have been held on the claims allowance issues and a Scheduling Order was entered setting these issues for trial on January 24–26, 1996.

## TARDILY FILED CLAIMS

■ Although the moving parties have not relied upon the debtor's claims being filed late, the Court observes that tardiness could alone be sufficient cause to disallow or to

subordinate these claims. It is true that .11 U.S.C. § 726(a)(1) allows payment of § 507 claims that are filed "tardily" but "before the date on which the trustee commences distribution under [§ 726(a)(1) ]." It is clear that the trustee has commenced distribution under that section because the trustee periodically and with the Court's approval has been paying certain administrative expenses under § 507(a)(1) and § 503(b). A review of the docket entries in this case reveals that administrative expenses were approved for payment after the conversion and before Mr. Hohenberg filed his two claims on December 30, 1993. *See, e.g.,* docket entries 676, 677, 678, 683, 684, 715, and 753.

After the conversion to chapter 7, a new § 341 notice was mailed to the debtor and creditors. That notice included notification of October 13, 1993, as a bar date for filing claims in the chapter 7 case. The Court has *sua sponte* reviewed the docket entries between the conversion and December 30, 1993, and no order was entered extending that bar date for Mr. Hohenberg. Thus, it is obvious that Mr. Hohenberg's two claims were filed late for § 501 allowance purposes, and they appear to have been filed too late for § 726(a)(1) purposes.

■ This Circuit has addressed the issue in *U.S. v. Ginley (In re Johnson),* 901 F.2d 513 (6th Cir.1990), where that Court held that IRS, a chapter 11 administrative claimant, was required to comply with the claims bar date in the converted chapter 7 case. The Court observed that "the post-petition, pre-conversion expenses at issue necessarily were incurred prior to the bar date set in the Chapter 7." *Id.,* at 521. The same is true here, as Mr. Hohenberg is claiming expenses and fees incurred either prior to the filing of the case or in the chapter 11 phase of this case.

Notwithstanding this conclusion, as the parties did not rely upon tardiness as a basis for subordination or disallowance of the claims, the Court will consider the motions for summary judgment.

## CLAIMS ALLOWANCE VERSUS EQUITABLE SUBORDINATION

■ A subissue is whether the Court should consider equitable subordination prior to allowing the claims of Mr. Hohenberg. The debtor suggests that a trial on his claims allowance should be held before it is appropriate for the Court to consider subordination. As discussed in the prior section of this opinion, it would appear as a matter of law that the debtor's claims are subject to disallowance as being filed tardily. However, in order to fully explain that the result of disallowance is equivalent to subordination in that insufficient funds are available to pay all allowed claims, and under the facts of this particular case, the Court concludes that it is appropriate to consider equitable subordination rather than simply disallowing the claims as late, and it is appropriate to decide the summary judgment issues prior to the scheduled trial on the claims allowance. Although the Court will be granting the trustee's motion for summary judgment disallowing the debtor's claims, in the interest of economy for the parties, as well as for both the appellate courts and this Court in the event of an appeal, this Court also will rule upon the plaintiffs' motions for summary judgment and will grant equitable subordination. That is, assuming that the debtor's claims were allowable in whole or in part, the Court finds cause to subordinate those claims to the allowed claims of all other creditors in this case. While it may appear to be overkill for the Court to disallow the claims and to also equitably subordinate them, the fact that the issues involved in the two decisions are interrelated and the possibility of an appeal combine to make it more efficient for the Court to address all of the relevant issues in this opinion.

■ The debtor points to the language of § 510(c) to argue that it is only appropriate for the Court to consider equitable subordination "of an allowed claim." 11 U.S.C. § 510(c)(1). As the Fifth Circuit has recently observed in an opinion addressing this issue, "the bankruptcy court's determination as to what order it should address motions before it is a matter best left to its sound discretion." *U.S. Abatement Corp. v. Mobil Exploration & Producing U.S., Inc. (Matter of U.S. Abatement Corp.),* 39 F.3d 556, 560 (5th Cir.1994) (citing *Landis v. North Am.*

*Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1936)). Moreover, that Court observed: "There is no requirement in the Bankruptcy Code, Bankruptcy Rules or case law that a bankruptcy court address the merits of a pending claim prior to disposing of a motion for equitable subordination." 39 F.3d at 560. It is correct that § 510(c) refers to "allowed" claims, but that does not mandate an allowance trial before a subordination trial. The Code's language is merely reflective of an assumption that the court would be considering allowed claims in subordination disputes. Typically, it would be unnecessary for the court to consider subordination of disallowed claims. But this case is not typical, and the Court concludes that § 510(c) does not restrict the Court from ruling on subordination as an alternative to allowance. As in the Fifth Circuit's case, the debtor here offered no reasons for the Court to delay ruling on subordination other than the fact that the debtor's claims have been pending for some time and that the debtor believed it to be in the interest of judicial economy to hear the claims allowance first. Of course, the Court is considering both claims allowance and subordination in this opinion, and the Court has concluded that it is not necessary to conduct a trial on either issues as there are no genuine issues of material fact in dispute. As will be discussed later, preclusion prevents the debtor from retrying determinative factual findings that have been made previously in this case.

### DISALLOWANCE OF CLAIMS

As to the allowance or disallowance of the debtor's two claims, the Court in its Scheduling Order had ruled that all of the Part VII Federal Rules of Bankruptcy Procedure would apply to this contested matter, and the trustee's motion for summary judgment was filed pursuant to FED.R.BANKR.P. 7056. The motion relies upon the trustee's affidavit and upon parts of the record of pleadings and hearings before the Court in this case. The debtor's response to the motion includes two affidavits of the debtor, dated November 30 and December 1, 1995, and the debtor's September 28, 1994 deposition. The Court has reviewed the debtor's affidavits and deposition, and the Court agrees with the trustee that they do not present factual disputes that are material to the allowance or disallowance of these claims.

As to the attorney fee claim, it asserts that the debtor prepetition, in January, 1991, paid $350,000 to the Norton law firm as a retainer for his representation in the subsequent chapter 11 case. The undisputed facts show that this advance came in the form of two $175,000 withdrawals from two IRA accounts, with the payments being credited to the Norton account on the day before the chapter 11 petition was filed. Mr. Hohenberg reported the IRA withdrawals as income on his 1991 tax return and claimed a deduction for legal expenses incurred that year. On his bankruptcy schedules, Mr. Hohenberg claimed exemptions in the IRA accounts in specific amounts that did not include the $350,000, and the Court's October 23, 1992 Order approved the IRA exemptions as claimed by the debtor. Thus, the $350,000 was not claimed as exempt from this estate. The debtor's affidavit explains the debtor's motive in withdrawing from the IRA accounts: basically, the debtor needed representation and this was a way of assuring it. However, the material facts of the IRA withdrawals and payment to the attorneys are not disputed. Neither are the manner and amounts of the debtor's IRA exemptions disputed.

Based upon these undisputed facts, the Court concludes that at the time the bankruptcy petition was filed, the $350,-000 was not exempt property. Exemptions and their values are determined as of the original filing date. *Armstrong v. Peterson (In re Peterson),* 897 F.2d 935 (8th Cir.1990). Moreover, conversion does not alter this date. 11 U.S.C. § 348; *Marcus v. Zeman (In re Marcus),* 1 F.3d 1050 (10th Cir.1993). The prepetition debtor had voluntarily converted a portion of his IRA funds from exempt to nonexempt property. The $350,000 retainer then became property of the bankruptcy estate. Mr. Hohenberg essentially seeks a reimbursement to him personally, claiming that the $350,000 plus accrued interest was an administrative expense incurred by him. When Mr. Hohenberg voluntarily transferred the previously exempt funds to

his lawyers, he lost all interest in the property as being exempt. *See, e.g., First Bank of Linden v. Sloma (In re Sloma)*, 43 F.3d 637 (11th Cir.1995). Mr. Hohenberg's retainer agreement with his counsel provided that the $350,000 was the law firm's property. Of course, whether the property finally passed to the law firm or to the bankruptcy estate was subject to this Court's determination. 11 U.S.C. §§ 327, 328, 329, 330, 331. The funds were actually property of the chapter 11 bankruptcy estate until the Court authorized their use, and the debtor and his former counsel participated in hearings in which the Court approved the application of the $350,000 retainer toward fees and expenses. *See* Order of July 26, 1994, approving the final fees and expenses of the Norton firm. Thus, the bankruptcy estate has already borne the burden of an administrative expense for these funds. The estate should not be required to bear a duplicate administrative expense by reimbursing Mr. Hohenberg.

Moreover, Mr. Hohenberg's transfer of the $350,000 was prepetition, and administrative expenses under § 503 concern postpetition expenses. By definition, the $350,000 transfer could not be an administrative expense. *In re Pierce Coal and Construction, Inc.*, 65 B.R. 521 (Bankr.N.D.W.Va.1986). The debtor has cited no material facts nor any persuasive authority for allowance of his administrative expense claim for the $350,000. Mr. Hohenberg argues that creditors benefitted by his prepetition retention of counsel. The creditors have never agreed that they benefitted from Mr. Hohenberg's counsel; nevertheless, the creditors have already paid his counsel's fees. There is no unjust enrichment to the bankruptcy estate by its use of the $350,000. The debtor voluntarily placed those funds into the nonexempt category, and the debtor's affidavits indicate that he personally benefitted from his counsel's representation. It would be unjust enrichment to the debtor to take the $350,000 a second time away from his creditors and reimburse him for his own prepetition transfer. The estate has generously paid this legal expense once, and once is enough.

Thus, as a matter of law, based upon the undisputed material facts, the debtor is not entitled to an administrative expense claim for reimbursement of funds that he advanced prepetition to his attorneys. This conclusion is in addition to the Court's prior conclusion that the debtor's claim was filed late. Claim number 87 will be disallowed on the trustee's motion for summary judgment.

As to the debtor's claim for management fees and other compensation, the trustee's motion also will be granted. The trustee has denominated this claim as one for management fees. The debtor's attachment to claim number 86 itemizes a 1% management fee based on the annual value of the bankruptcy estate, a fee for services in reference to certain sales, an incentive fee for increase in stock values, and certain expenses. Generally speaking, an individual debtor in possession is not awarded a management fee for services rendered on behalf of the bankruptcy estate, and a chapter 7 debtor is not entitled to a fee for services. *See, e.g., In re Harp*, 166 B.R. 740 (Bankr. N.D.Ala.1993); *In re Neese*, 137 B.R. 797 (Bankr.C.D.Cal.1991); *In re Lloyd, Carr & Co.*, 617 F.2d 882 (1st Cir.1980). Certainly this general rule is true in the absence of court orders approving a fee for the debtor in possession or chapter 7 debtor. There has been no order from this Court approving a fee to Mr. Hohenberg, except for the August 28, 1991 Order allowing Mr. Hohenberg to be compensated under § 503(b)(1)(A) for specific services that he might render the estate in connection with timber sales contracts. *See In re Herberman*, 122 B.R. 273 (Bankr. W.D.Tex.1990). However, that Order specified procedures for Mr. Hohenberg concerning future compensation requests. For example, proposed contracts for timber sales were to be supplied to interested parties for review and approval, and in the absence of agreement with creditors and the United States Trustee, Mr. Hohenberg was to file a motion for approval of such contracts prior to their execution. No such contracts were ever submitted to the Court for approval.

The first notice to the Court or to creditors of the debtor's management fee claim was the filing of Mr. Hohenberg's claim number 86. It is obvious that the chapter 7 debtor thought of this claim after the fact, as

his chapter 11 disclosure statement and proposed plan do not mention a preconfirmation salary or fee for the former debtor in possession. The debtor's plan did suggest a postconfirmation annual salary of $48,000 to Mr. Hohenberg,[1] but his present claim of almost $600,000 far exceeds such a salary and the claim is for preconfirmation, preconversion services. Thus, except for the potential timber contracts, Mr. Hohenberg did not seek the Court's approval for compensation prior to performing any alleged services for the estate. As a result, this claim must be viewed as a *nunc pro tunc* application for employment of a professional. Throughout this case it has been evident that Mr. Hohenberg had sufficient income, including from exempt assets, to live comfortably. There is no suggestion that he needed a management fee in order to support himself. Of course, Mr. Hohenberg can not be a professional person employed by this estate. As the debtor and former debtor in possession, Mr. Hohenberg is clearly not "disinterested," a requirement for professional employment. 11 U.S.C. § 327(a). Moreover, his claim does not meet the requisites for *nunc pro tunc* approval of employment. *See In re Martin*, 102 B.R. 653 (Bankr.W.D.Tenn.1989).

■ Primarily, however, the debtor's attempt at acquiring compensation overlooks the requirement that a debtor in possession be a fiduciary for his creditors, owing them a duty of care, loyalty and to maximize the estate. *See, e.g., First Union Nat'l Bank v. Tenn–Fla Partners (In re Tenn–Fla Partners)*, 170 B.R. 946 (Bankr.W.D.Tenn.1994). Mr. Hohenberg seems to expect compensation for what he was obligated to do as a former debtor in possession, and his compensation request comes after the Court found sufficient cause to remove him as debtor in possession and to convert the case to chapter 7. *See* Order of conversion with transcript of June 17, 1993, ruling. Assuming that Mr. Hohenberg's personal efforts did benefit this estate, that is precisely what a fiduciary is required to do. However, the debtor has offered nothing other than conclusory comments in his affidavits that he benefitted the estate, and those self-serving statements par-

tially are in conflict with the Court's prior findings when the case was converted and the debtor in possession was removed. It would be inconsistent for the Court now to say that Mr. Hohenberg is entitled to $600,000 in compensation, or any amount, for activity that was insufficient to keep him in the debtor in possession capacity. Moreover, as will be discussed more fully later in this opinion, it would be inconsistent with the law of this case found in the conversion findings and Order to now allow the debtor's compensation claim.

■ The debtor has offered no material reasons nor relevant authority for this Court to reverse itself and reward the failed debtor in possession with compensation. *See, e.g., In re Arlan's Dept. Stores, Inc.*, 615 F.2d 925, 943 (2d Cir.1979) ("There is no doubt of the inherent power of a bankruptcy judge to deny fees and disbursements where serious breaches of fiduciary obligations occur."); *accord, Whitten Management Corp. v. Wetzel (In re Ranchero Motor Inn, Inc.)*, 527 F.2d 1044 (9th Cir.1975). This now is a liquidation bankruptcy case, and under the distribution scheme for chapter 7 cases the creditors come ahead of any refund to the debtor. 11 U.S.C. § 726(a)(6). The debtor's administrative expense claim for compensation is an attempt at an end run of this statutory distribution scheme. As a matter of law, under the undisputed material facts, the debtor's claim must be disallowed. The Court will grant the trustee's summary judgment motion to disallow claim number 86.

## EQUITABLE SUBORDINATION

In an effort to provide a complete analysis of the issues presented in the summary judgment motions, the Court will address the trustee's motion to subordinate Mr. Hohenberg's claims to those claims of all other creditors and HMF's motion to subordinate the debtor's claims to only the claims of HMF. In the event that an appellate court should find error in the Court's conclusions that Mr. Hohenberg's claims should be disallowed, this discussion would be relevant and perhaps would save the parties the expense

1. Mr. Hohenberg's proposed plan of reorganization was not confirmed.

of a second appeal. Based upon the undisputed facts before the Court and primarily upon this Court's July 17, 1993 findings of fact to support the conversion of this case, the Court finds that these two claims filed by the debtor, if allowed, would be equitably subordinated to the allowed claims of all other creditors in this case.

■ The Court's July 17, 1993 findings of fact preclude the debtor from relitigating those facts. Mr. Hohenberg was a participant in the July 17 hearing, and he was represented by counsel. He enjoyed an opportunity to fully and fairly litigate the issues before the Court. The subject of that hearing was a motion to convert the case, with a resultant removal of the debtor in possession. The facts necessary to support cause for conversion were actually and fully litigated, and the Court made numerous specific factual findings. Determination of those findings was necessary to the outcome of the contested proceeding. Thus, the elements for collateral estoppel, as enunciated in the Sixth Circuit in *Detroit Police Officers Association v. Young*, 824 F.2d 512, 515 (6th Cir.1987), were satisfied. There the Court stated the following guidelines:

(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;

(2) determination of the issue must have been necessary to the outcome of the prior proceeding;

(3) the prior proceeding must have resulted in a final judgment on the merits;

(4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Id.*

■ As to the third element of a final judgment, there is a peculiar scenario. The complaint filed by HMF alleges in Count I, paragraph 13, that "[t]he June 17, 1993 Order was not appealed from, and has become final." The defendant/debtor's answer, at its paragraph 3, admits that allegation. However, there was a notice of appeal filed by Mr. Hohenberg. *See* Docket Entry No. 514. Moreover, there were designations by the debtor and BTCo of items to be included in the record for appeal. Docket entries 522, 543 and 586. The Court discovered these entries in its preparation of this opinion as it reviewed the docket entries in the case file. Of course, the trial judge does not play a role in perfecting appeals or transmitting them to the United States District Court. There is no indication from the docket entries that the Clerk of this Court sent the debtor's appeal to the District Court. This Court does not know if the debtor's former counsel directed the Clerk not to transmit the appeal. Apparently, the debtor terminated his appeal because his admission to HMF's complaint is clear. Thus, the Court's Order of conversion is final and no appeal is pending.

■ Assuming, however, that there was some clerical error and that Mr. Hohenberg's answer was also incorrect, and assuming that a belated appeal were pending, the "pendency of an appeal does not suspend the operation of an otherwise final judgment as *res judicata* or *collateral estoppel* unless the appeal removes the entire case to the appellate court and constitutes a proceeding *de novo.*" MOORE'S FEDERAL PRACTICE 2d Ed., ¶ 0.416[3.–2] (citing, *inter alia, Commodities Export Co. v. U.S. Customs Service*, 957 F.2d 223 (6th Cir.1992)). Clearly, this case is still pending before this Court; moreover, no stay of the Court's conversion Order was sought. The case was converted and a chapter 7 trustee was appointed. That trustee actively has administered the chapter 7 estate for two and one-half years. Thus, assuming the pendency of an appeal, the conversion Order still enjoys preclusive effect.

■ The debtor, of course, argues that the same factual and legal issues were not before the Court for conversion purposes as are before the Court for subordination purposes. The Court disagrees. Certainly, conversion and subordination are different legal concepts, but they may turn on the same facts and equitable principles. The Court's June 17, 1993, findings established that the former debtor in possession was a fiduciary to his creditors and that he violated that duty.

The transcript of the Court's findings was filed as a part of the conversion Order. The Court will not recite all of those findings; rather, the Court refers to the transcript and incorporates it into this opinion. Included in those findings were: that the debtor was "incapable of impartially carrying out his statutory or fiduciary duty" (p. 15); that the debtor was pursuing litigation with a goal of impeding creditors (p. 18) and with an expectation "that he personally will retain significant assets of the estate" (p. 17); that his chapter 11 disclosure and proposed plan were "motivated by his self-interest in preserving assets for himself and possibly for his family" (p. 17); that he was "unjustifiably turning a liquidation case into a full-time job for which he expects to receive pay" (p. 19); that he "has placed his personal and family interest above estate interest" (p. 19); that he had harmed the estate by paying his local counsel's mother to edit his unwritten autobiography (p. 20); that he had improperly, and to the detriment of this estate, taken draws disguised as management fees from Evergreen Plaza Partnership, of which the estate had a one half interest (pp. 20–22); that he had concealed from the estate a valuable photography collection (pp. 23–24); that he "improperly used estate funds for personal purposes" (p. 24); that he, for example, went to Europe on a pleasure trip and allowed the estate to pay part of that expense (pp. 26–27); that he engaged in other nonbusiness travel at estate expense and without Court approval (pp. 27–28); that he frequently dined at estate expense and without business justifications (p. 28); and that he charged personal expenses, such as automobile, telephone and household items, to the estate (pp. 29–30). The Court also found that many of the debtor in possession's legal and business actions had been of no benefit to his creditors (pp. 32–33), and that he had failed to keep his creditors fully informed (pp. 33–34). These and other findings were cause for conversion of the case. They are also separately and jointly cause for subordination of the debtor's claims. Requiring a trial on the subordination issues is unnecessary when sufficient facts to mandate subordination have been found previously.

As the Eleventh Circuit has said, where an insider or fiduciary's actions or inactions are taken for the benefit personally of the fiduciary, and those actions or inactions disadvantaged some or all creditors, the claims of such a person are to subordinated. *Estes v. N & D Properties, Inc. (In re N & D Properties)*, 799 F.2d 726, 732 (11th Cir. 1986); *see also Bergquist v. First National Bank of St. Paul (In re American Lumber Co.)*, 7 B.R. 519 (Bankr.D.Minn.1979); *McLemore v. Olson (In re B & L Laboratories, Inc.)*, 62 B.R. 494 (Bankr.M.D.Tenn.1986).

This Circuit has adopted the Fifth Circuit's standard for equitable subordination. *First Nat'l Bank v. Rafoth (In re Baker & Getty Financial Services, Inc.)*, 974 F.2d 712, 719–720 (6th Cir.1992) (quoting *In re Mobile Steel Corp.*, 563 F.2d 692, 699–700 (5th Cir.1977)). The controlling elements are: (1) the subordinated "claimant must have engaged in some type of inequitable conduct;" (2) such "misconduct must have resulted in injury to the [other] creditors or conferred an unfair advantage on the [subordinated] claimant;" and (3) "equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code]." 563 F.2d at 699–700. As the Sixth Circuit opinion observes, if the claimant is an insider, as was Mr. Hohenberg, the standard for subordination does not require a showing of gross misconduct that may be required for noninsider claimants. 974 F.2d at 718 (quoting *Matter of Teltronics Serv. Inc.*, 29 B.R. 139, 169 (Bankr.E.D.N.Y.1983)). Whether gross misconduct or a lesser standard is applied, the findings made in the conversion Order are sufficient to subordinate this debtor's claims.

At the conversion trial, it was established by clear and convincing evidence [2], that Mr. Hohenberg had engaged in grossly inequitable conduct, designed to foster his position to the detriment of his creditors. The Court has reviewed its earlier findings, and the Court is convinced that the same findings dictate that Mr. Hohenberg's claims, if they

2. The Court understands that only a preponder-

ance of the evidence would have been required.

were allowed, be subordinated to the allowed claims of all other creditors.

As a result, the Court also will grant the trustee's and HMF's motions for summary judgment in the two equitable subordination adversary proceedings.   Separate Orders will be entered in the case file and in the two adversary proceedings.